[Cite as *State v. Scott*, 2014-Ohio-2993.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 13 MA 47 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| PATRELL M. SCOTT | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS: Criminal Appeal from the Court of
Common Pleas of Mahoning County,
Ohio
Case No. 11 CR 729

JUDGMENT: Affirmed.

APPEARANCES:

For Plaintiff-Appellee: Atty. Paul J. Gains
Mahoning County Prosecutor
Atty. Ralph M. Rivera
Assistant Prosecuting Attorney
21 West Boardman Street, 6th Floor
Youngstown, Ohio  44503

For Defendant-Appellant: Atty. Brian Moriarty
R. Brian Moriarty, LLC
2000 Standard Building
1370 Ontario Street
Cleveland, Ohio  44113

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Mary DeGenaro

Dated:  June 24, 2014

WAITE, J.

{¶1}    Appellant Patrell M. Scott appeals the decision of the Mahoning County Common Pleas Court sentencing him to ten years in prison for the shooting death of a woman and tampering with evidence after the crime.  Appellant argues that the trial court failed to make the necessary findings before imposing consecutive sentences and that the trial court's decision to deny his motion to seek new counsel at his sentencing hearing without inquiring into the reasons for the motion violated his Sixth Amendment right to counsel.  Appellant's two assignments of error are without merit and are overruled.  The judgment of the trial court is affirmed.

Factual and Procedural History

{¶2}    On July 28, 2011, Appellant was indicted on three counts by the Mahoning County Grand Jury.  The Grand Jury charged Appellant with one count of felonious assault, a second degree felony with a gun specification, in connection with the June 23, 2011 shooting of Melesia Day.  In count two the Grand Jury charged Appellant with involuntary manslaughter, a first degree felony with a gun specification.  In count three Appellant was charged with tampering with evidence, the gun used to shoot Ms. Day.

{¶3}    On May 14, 2012, Appellant entered a guilty plea to an amended indictment pursuant to a plea agreement.  In the agreement, the state dismissed count one and amended count two to a third degree felony.  In exchange for the amendments to the indictment, Appellant pleaded guilty to count two as amended and count three, also a third degree felony.  The trial court informed Appellant of the rights he would forgo by entering his plea, confirmed his understanding of those

rights and the effect of his plea, accepted Appellant's change of plea, ordered a pre-sentencing report, and scheduled the matter for sentencing.

**{¶4}** On August 8, 2012 Appellant appeared in court for sentencing. The state requested a maximum, eleven year, consecutive sentence. The victim's mother, Melissa Floyd, appeared at the sentencing hearing and made a statement that Appellant shot her daughter, Ms. Day, in the neck in front of Day's three-year-old daughter, who Ms. Floyd is now raising. Ms. Floyd said the family spent six days in the intensive care unit with Ms. Day, who never regained consciousness. She described the grief of the family and Ms. Day's young daughter as a result of the shooting.

**{¶5}** During the sentencing hearing the trial court confirmed Appellant's understanding of his plea, including the rights waived by the entry of plea, the court's role in sentencing, and his right to appointed counsel, which he waived by retaining counsel. Counsel made a statement on Appellant's behalf, describing the shooting as an accident that also resulted in Appellant losing custody of his own daughter. Counsel mentioned that Appellant was on extended probation at the time of the incident due to a prior probation violation. Counsel requested a four year, minimum term, sentence. Appellant initially declined to make a statement, but indicated that he was "sorry toward the family and all that that [sic] this happened." (Sent. Tr., p. 15.)

**{¶6}** The trial court emphasized that Appellant was convicted in 2008 for improper handling of a firearm. That conviction resulted in a fifteen month sentence. The court noted a 2009 probation violation. The court addressed the fact that the

death of Ms. Day was Appellant's second violation involving a firearm, and concluded:

> Taking everything into account, the principles and purposes of sentencing and the recidivism factors and the finding by the court that consecutive terms are needed in this case to protect the public, I do find that the -- a single term does not adequately reflect the seriousness of the conduct that's involved in this foolish, nonsensical death.

(Sent. Tr., pp. 15-16.) The trial court sentenced Appellant to four years on involuntary manslaughter (count two of the amended indictment) with an additional three years for the firearm specification, to be served consecutively with three years for tampering with the evidence, for a total sentence of ten years. The court indicated that Appellant would be given credit for time served. The hearing concluded without any further statement by defense counsel or the state.

{¶7} Appellant did not file an appeal of his sentence within the prescribed period. We granted leave to Appellant to file a delayed appeal of the August 17, 2012 entry journalizing his sentence.

<u>ASSIGNMENT OF ERROR I</u>

THE TRIAL COURT ISSUED A SENTENCE THAT IS CONTRARY TO LAW.

{¶8} Appellant contends that the trial court did not make the necessary findings prior to sentencing him to consecutive terms and that his sentence is therefore contrary to law. Appellant did not object to the imposition of consecutive

terms during his sentencing hearing, and has therefore waived all but a plain error review of his sentence. *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶152, citing *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶377. As we have previously noted, individuals who are sentenced after September 30, 2011 are subject to the version of R.C. 2929.14(C)(4) revised by H.B. 86, even if a plea was entered or verdict returned prior to that date. *State v. Williams*, 7th Dist. No. 11 MA 185, 2014-Ohio-1015, ¶27; *State v. Smith*, 7th Dist. No. 12 MA 168, 2014-Ohio-1398, ¶19; *State v. Hill*, 2014-Ohio-919.

**{¶9}** Appellant argues that pursuant to *State v. Venes*, 8th Dist. No. 98682, 2013-Ohio-1891, the applicable standard of review for consecutive sentences has been established by R.C. 2953.08. Appellant contends that the two-step analysis introduced by the Ohio Supreme Court in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, should no longer apply to evaluations of post-H.B. 86 sentencing and urges us to adopt the reasoning of the Eighth District in *Venes*. We have consistently rejected such arguments. See, *e.g.*, *Williams*, *Smith*, *Hill*, *supra*, and *State v. Jackson*, 2014-Ohio-777, *inter alia*.

**{¶10}** In *State v. Hill*, we recently stated that unless given other direction by the Supreme Court, we would continue to apply the *Kalish* two-part test when evaluating sentencing decisions. *Hill*, *supra*. Turning to the matter at bar, whether under the first prong of *Kalish* or under R.C. 2953.08(G)(2), the same legal standard is applied.

{¶11} R.C. 2953.08(C)(1) states that "a defendant who is convicted or pleads guilty to a felony may seek leave to appeal a sentence imposed upon the defendant on the basis that the sentencing judge has imposed consecutive sentences under division (C)(3) of section 2929.14 of the Revised Code and that the consecutive sentences exceed the maximum prison term allowed by division (A) of that section for the most serious offense of which the defendant was convicted." Appellant relies on R.C. 2953.08(G)(2), which states:

> The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
>
> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard of review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division * * * (C)(4) of section 2929.14 * * * whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

**{¶12}** Appellant contends that the trial court's findings were insufficient to support consecutive sentences under R.C. 2929.14(C)(4). This section provides:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction * * * or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offense so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶13} Appellant does not challenge the duration of his sentence and concedes that he was sentenced according to applicable law. Appellant contends only that the findings made during his sentencing hearing were insufficient and that the trial court failed to provide reasons for its findings. Both Appellant and the state refer to the same section of the sentencing transcript, in which the judge discussed Appellant's sentence:

The court has had the benefit of having the presentence investigation that outlines your history, and the court does pay particular attention to the fact that in 2008 you did have an attempted improper handling a firearm that got you 15 months in prison. And following that, everything's been pretty good except for a very minor thing in '09, culminating in this one involving another firearm.

Taking everything into account, the principles and purposes of sentencing and the recidivism factors and the finding by the court that consecutive terms are needed in this case to protect the public, I do find that the -- a single term does not adequately reflect the seriousness of the conduct that's involved in this foolish, nonsensical death.

(Sent. Tr., pp. 15-16.) Although the trial court is required to make findings, it is no longer required to state the reasons for those findings. *State v. Galindo-Barjas*, 7th Dist. No. 12 MA 37, 2013-Ohio-431.

**{¶14}** In making its findings, while a trial court is not required to recite the statute verbatim or utter "magic" or "talismanic" words, there must be an indication on the record that the court found (1) that consecutive sentences were necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger posed to the public, and (3) one of the findings described in R.C. 2929.14(C)(4)(a),(b), or (c). *State v. Bellard*, 7th Dist. No. 12-MA-97, 2013-Ohio-2956, ¶17.

**{¶15}** As we explained in *State v. Hill*, 7th Dist. No. 13 CA 82, 2014-Ohio-1965, the transcript of the sentencing hearing must make it "clear from the record that the trial court engaged in the appropriate analysis." *Id.* at ¶27, citing *State v. McKenzie*, 3d Dist. No. 15-12-07, 2012-Ohio-6117, ¶10, *inter alia*. The transcript in *Hill* reflected the trial court's detailed analysis under R.C. 2929.18. and .12, which were specifically discussed, but did not include any reference to R.C. 2929.14(C)(4). Because the *Hill* court relied on only two statutory provisions and never mentioned the other applicable provisions, the record did not support a finding that the court engaged in the correct analysis.

**{¶16}** In the matter at bar, the trial court does not cite specific provisions, but uses instead the phrasing of the applicable statutes: "sentencing and the recidivism

factors"; "consecutive terms are needed in this case to protect the public"; "single term does not adequately reflect the seriousness of the conduct." (Sent. Tr. pp. 15-16.)  Although it may be preferable if the trial court explicitly referenced R.C. 2929.14 and used the framework and phrasing contained in the statute, the law simply requires the court to engage in the appropriate analysis.  This record supports that conclusion.  And, unlike the court in *State v. Holmes*, 7th Dist. No. 13 MA 76, 2014-Ohio-2724, this trial court directly refers to the harm caused by Appellant's actions as one of the bases for imposing consecutive sentences.

{¶17} Although the language used by the court at sentencing does not precisely track the statute, this record reflects that the trial court substantively concluded: (1) consecutive sentences were necessary to protect the public; (2) consecutive sentences were not disproportionate to the seriousness of the offenses; and (3) consecutive sentences were necessary to punish Appellant because a single sentence would not reflect the seriousness of the offense.  The record supports the trial court's conclusions about the seriousness of the offenses:  a woman was shot through the neck in the presence of her three-year-old daughter, died as a result of this shooting, and Appellant attempted to conceal the evidence of his crime.  The record also reflects the fact that this incident is Appellant's third in four years, his second involving a firearm.  To the extent that it resulted in death, this crime represents a severe escalation of harm.  The sentence is not otherwise contrary to law.

{¶18} Whether pursuant to the first prong of *Kalish* or in applying R.C. 2953.08(G), Appellant's sentence is not clearly and convincingly contrary to law. The conclusions reached by the trial court are supported by the record. Nothing in this record indicates that the trial court abused its discretion in sentencing Appellant to consecutive terms. Thus, Appellant's first assignment of error is without merit and is overruled.

ASSIGNMENT OF ERROR II:

THE DEFENDANT WAS DENIED HIS RIGHT TO COUNSEL AND THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING HIS MOTION WITHOUT MAKING THE PROPER INQUIRY.

{¶19} Appellant contends that an exchange with the court during his sentencing hearing, after the hearing had begun and the victim's mother had spoken on behalf of the victim and her family, amounted to a violation of his Sixth Amendment right to counsel. The court directed Appellant's counsel to bring his client to the bench, and inquired "[i]s there something you wanted to say?" (Sent. Tr., p. 7.) Counsel responded, "[y]our Honor, my client informed me before walking in here that he wishes to seek other counsel for this proceeding." (Sent. Tr., p. 7.) The judge then stated: "Well, that motion will be overruled." (Sent. Tr., p. 7.) The court continued the hearing with a colloquy concerning Appellant's understanding of his indictment, plea, and the rights he was forgoing in entering a plea. Appellant declined to make a statement but briefly stated he was "sorry toward the family."

(Sent. Tr., p. 15.)    Counsel spoke on Appellant's behalf prior to sentencing, describing Appellant's grief when discussing the consequences of the shooting.

**{¶20}** The Sixth Amendment to the United States Constitution, as made applicable to the states by the Fourteenth Amendment, and Section 10, Article I of the Ohio Constitution, provide that a defendant shall have the right to have the assistance of defense counsel.  Pursuant to Crim.R. 44(A), a defendant has the right to counsel at every stage of the proceedings.  It is axiomatic that the right to counsel extends to sentencing. *State v. Coleman*, 7th Dist. No. 08-HA-3, 2009-Ohio-3250; *Mempa v. Rhay*, 389 U.S. 128, 134, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967).  "Even though the defendant has no substantive right to a particular sentence within the range authorized by statute, the sentencing is a critical stage of the criminal proceeding at which he is entitled to the effective assistance of counsel."  *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), citing *Mempa*, *supra*.  A trial court's decision to deny a motion to substitute counsel is reviewed for an abuse of discretion.  *State v. Murphy*, 91 Ohio St.3d 516, 523, 747 N.E.2d 795 (2001), citing *State v. Cowans*, 87 Ohio St.3d 68, 717 N.E.2d 298 (1999).

**{¶21}** In this instance, Appellant had retained, not appointed, counsel.  Counsel was present at and participated in every stage of the proceedings.  Appellant was allowed to confer with counsel, and does not complain of his access to counsel.   On appeal, Appellant contends simply that the trial court should have inquired further into his wish to seek other counsel for his sentencing hearing, which he had not acted on or communicated to the court in the nearly three months

between the plea and sentencing hearings. Appellant's belief that the trial court was required to conduct an inquiry prior to denying a motion for continuance to seek alternative counsel is based on two federal Sixth Circuit appellate court cases, *U.S. v. Iles*, 906 F.2d 1122 (1990) and *Linton v. Perini*, 656 F.2d 207 (1981), which address a defendant's dissatisfaction with appointed counsel prior to trial.

{¶22} The reviewing court's analysis in *Iles* and *Linton* concerns the particular relationship between a defendant and appointed counsel, and the responsibilities of the trial court in that context. An indigent defendant has a limited right to counsel of his choice, because the indigent defendant's options are limited by the fact that the court, not the indigent, ultimately controls the appointment of counsel. Due to the limitations on an indigent's autonomy in the selection of counsel, and the role the court plays in selecting counsel, when an indigent defendant makes a "timely and good faith motion requesting that appointed counsel be discharged and new counsel appointed, the trial court clearly has a responsibility to determine the reasons for the defendant's dissatisfaction with his current counsel." *Iles*, *supra* at 1130, quoting LaFave and Isreal, *Criminal Procedure*, 11.4 at 36 (1984). The reasons for this enhanced responsibility for inquiry, however, do not extend to a defendant like Appellant, who has retained counsel: "it is clear that when an accused is financially able to retain an attorney, the choice of counsel to assist him rests ultimately in his hands and not in the hands of the State." *Wilson v. Mintzes*, 761 F.2d 275, 280 (1985). Moreover, even if Appellant were complaining of the performance of appointed counsel under *Iles* and *Linton*, any request to change representation must

be both timely and made in good faith, and is subject to the discretion of the trial court. There is simply no legal requirement that the trial court engage in any specific inquiry as to the reason a defendant wishes to seek other retained counsel.

{¶23} With regard to the trial court's decision to deny the request, the majority of cases dealing with a denial of a motion to substitute counsel address motions made prior to the commencement of trial, *e.g. Murphy*, *Cowans*, *Iles* and *Linton*, *supra*. The analysis applied to pre-trial (or mid-trial) requests to change representation addresses a broader array of concerns than those involved at sentencing and is more than adequate to ensure that the court acted reasonably under the circumstances in this instance. It is "true that a trial court, acting in the name of calendar control, cannot arbitrarily and unreasonably interfere with a client's right to be represented by the attorney he has selected." *Linton*, *supra*, 209. "On the other hand, the right to counsel of choice may not be used to unreasonably delay * * *." *Id.* The analysis of the Sixth Circuit in the cases cited by Appellant agrees with the conclusion reached by the Ohio Supreme Court in *Murphy* and *Cowans*. As the Sixth Circuit explains in *Linton*, when a trial court receives a request for continuance to allow a change in counsel, the trial court must:

> be sensitive to the defendant's right to counsel of his choice, as well as
> the public's interest in prompt and efficient administration of justice. If
> the court finds that the delay is an attempt to manipulate a trial, or
> causes prejudice to the prosecution, or creates difficulties for the trial
> court, the trial court may interfere with the defendant's right to counsel

of his own choice and require the case to proceed. On the other hand, where the request is reasonable, where there have been no prior adjournments, where the length of delay is moderate, and where the adjournment seems to be for legitimate reasons, the court should allow a reasonable adjournment to permit a defendant to have retained counsel of his own choice.

This does not mean that a trial court cannot tightly control its own docket, or that its assignment of cases can be manipulated by defense counsel and defendants. A court must always keep control of its own docket, but in doing so it must be reasonable and consider the constitutional right of a defendant to have retained counsel of his choice.

*Linton*, *supra* at 209.

**{¶24}** The *Linton* decision is, at most, persuasive authority. However, the United States Supreme Court cases cited within the decision are binding and amply demonstrate that the trial court acted reasonably, here. The *Linton* Court relies extensively on the D.C. Circuit's decision in *United States v. Burton*, 584 F.2d 485 (CA D.C.1978), in which that court concluded that the right to retain counsel of one's own choosing is not absolute and must be carefully balanced against the public's interest in the orderly administration of justice. The *Linton* court adopted this reasoning from *Burton*:

"... An essential element of the Sixth Amendment's protection of the right to assistance of counsel is that a defendant must be afforded a reasonable opportunity to secure counsel of his own choosing. As the Supreme Court stated in *Powell v. Alabama*, 287 U.S. 45, 53 S(up).Ct. 55; 77 L.Ed. 158 (1932) * * *

"Yet the right to retain counsel of one's own choice is not absolute. The right 'cannot be insisted upon in a manner that will obstruct an orderly procedure in courts of justice, and deprive such courts of the exercise of their inherent powers to control the same.' The public has a strong interest in the prompt, effective, and efficient administration of justice; the public's interest in the dispensation of justice that is not unreasonably delayed has great force." * * *

"What is a reasonable delay necessarily depends on all the surrounding facts and circumstances. Some of the factors to be considered in the balance include: the length of the requested delay; whether other continuances have been requested and granted; the balanced convenience or inconvenience to the litigants, witnesses, counsel and the court; whether the requested delay is for legitimate reasons, or whether it is dilatory, purposeful or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; whether defendant has other competent counsel prepared to try the case, including the consideration of whether other counsel

was retained as lead or associate counsel; whether denying the continuance will result in an identifiable prejudice to defendant's case, and if so, whether this prejudice is of a material or substantial nature; the complexity of the case; and other relevant factors which may appear in the context of any particular case." Id. at 490, 491.

*Linton*, *supra* at 209-210.

**{¶25}** The Burton court explains that the existence of prejudice is only one of a number of factors to be considered when balancing the interests of the criminal defendant with other considerations, which should include the interest in orderly procedure and in avoiding manipulation of the judicial process.

"The question ... is whether appellant was afforded his constitutional right to select his own counsel. In determining whether the right was violated, the existence of prejudice is only one of the factors to consider. The existence of prejudice to the case is not a prerequisite to a constitutional violation in this context ..." (Emphasis added) Id. at 498.

*Linton*, *supra* at 210.

**{¶26}** None of the factors identified by the courts in *Linton* or *Burton* to support a finding that a delay would be reasonable are present in this record.

**{¶27}** Appellant was represented by retained counsel at all stages in the proceedings below. He entered his plea on May 14, 2012, his sentencing hearing was scheduled for and held on August 8, 2012. If Appellant wanted alternate

representation at his sentencing hearing, he had nearly three months to dismiss and retain new counsel. Appellant's request to be allowed to *seek* new counsel for his sentencing hearing, made verbally and for the first time during his sentencing hearing, was neither timely nor reasonable. The trial court did not err in summarily denying the request. Appellant's second assignment of error is overruled.

<u>Conclusion</u>

**{¶28}** Appellant's sentence was not contrary to law, the trial court made the necessary findings when imposing consecutive sentences. Appellant was not deprived of his right to counsel and received adequate representation at all points in the proceedings in the trial court. Appellant's two assignments of error are without merit, and are overruled. The judgment of the trial court is affirmed.

Donofrio, J., concurs.

DeGenaro, P.J., concurs.