[Cite as *State v. Cisternino*, 2019-Ohio-2668.]

## IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-L-114** |
| ANTHONY CISTERNINO, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Willoughby Municipal Court, Case No. 2018 CRB 01779.

Judgment: Affirmed.

*Judson J. Hawkins*, 37811 Lake Shore Boulevard, Eastlake, OH 44095 (For Plaintiff-Appellee).

*Rebecca R. Grabski*, 206 South Meridian Street, Suite B, Ravenna, OH 44266 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1} Appellant, Anthony J. Cisternino ("Mr. Cisternino"), appeals from the judgment of the Willoughby Municipal Court which sentenced him to 90 days in jail with 81 days credit for time served and fined him $100 after accepting his plea of no contest to one count of resisting arrest.

{¶2} Mr. Cisternino raises two arguments on appeal. First, he argues he was deprived of the effective assistance of counsel because his counsel failed to file a motion to suppress evidence obtained from an allegedly illegal arrest. Mr. Cisternino also argues

the trial court abused its discretion by accepting his plea of no contest despite his complaints about his counsel and clear misunderstanding of the legal process.

{¶3} After a consideration of the record and relevant law, we affirm the judgment of the trial court. Mr. Cisternino was repeatedly offered and declined the opportunity to have new counsel appointed but chose to plead no contest after the trial court engaged in an extended Crim.R. 11 colloquy to ensure he was knowingly, voluntarily, and intelligently waiving his rights. Further, Mr. Cisternino failed to present any evidence to support his allegations that his counsel was deficient and that but for his counsel's deficient performance, he would have pleaded differently.

## Substantive and Procedural History

{¶4} After arrest on April 5, 2018, Mr. Cisternino was facing two charges of possession of dangerous drugs with forfeiture specifications under one case number and charges of receiving stolen property and resisting arrest under another case number in the Willoughby Municipal Court. After a preliminary hearing on the drug possession charges, Mr. Cisternino was bound over and then indicted by the Lake County Grand Jury on three misdemeanor counts: two counts of possession of dangerous drugs with forfeiture specification, a first degree misdemeanor in violation of R.C. 4729.51(E)(1)(c), for the possession of 40 doses of Bupropion, Alprazolam residue, and four plastic containers; and one count of resisting arrest, a second degree misdemeanor in violation of R.C. 2921.33(A). Mr. Cisternino did not post bond.

{¶5} When the two municipal court cases were initially transferred to the court of common pleas, each case was assigned a separate case number. The court of common pleas consolidated the two cases. The indictment on the drug possession charges and

2

resisting arrest charge was filed in the consolidated case and transferred back to the Willoughby Municipal Court, which assigned one case number with parts A & B (the two drug possession charges) and C (resisting arrest).

{¶6} Mr. Cisternino was appointed counsel from the public defender's office who entered an initial plea of not guilty on Mr. Cisternino's behalf. At the pretrial hearing held on June 26, 2018, Mr. Cisternino agreed to withdraw his not guilty plea via a plea agreement whereby the two drug possession counts would be dismissed in exchange for a plea to the resisting arrest count. The court accepted Mr. Cisternino's plea of no contest to the count of resisting arrest, and the state dismissed the remaining counts.

{¶7} During the hearing, Mr. Cisternino asked the trial court for clarification about an "inactive" felony that he was told was "on his record" at the Lake County jail and inquired if it was related to the present case. The gravamen of his concern apparently was based in the common pleas court docket entries in the two cases and his desire to assure himself his plea would take care of all charges he was facing from this arrest.

{¶8} The trial court assured Mr. Cisternino he could not be charged twice for the April 5, 2018 incident, and that once the counts of possessing a dangerous substance were dismissed, he could not be charged again. Mr. Cisternino asked the trial court what happened to the count of receiving stolen property. The trial court explained that all the charges were presented to the grand jury, and this indictment on three counts was what the grand jury returned. The court explained the two different common pleas case numbers. Mr. Cisternino expressed satisfaction with the court's explanation concerning the charges stemming from this arrest.

3

{¶9} The trial court then began to engage Mr. Cisternino in the Crim.R. 11 colloquy to ensure his waiver of his right to a trial was knowing, voluntary, and intelligent. The trial court asked Mr. Cisternino if he understood he was waiving his rights to: a trial by judge or jury, confront witnesses by cross-examination, compel witnesses to come to court and to testify on his behalf, have the state prove its case beyond a reasonable doubt, and remain silent. Mr. Cisternino responded in the affirmative. He also confirmed that no one made any threats or promises to coerce him into changing his plea, he was not under the influence of any drugs or alcohol, and he was a United States citizen.

{¶10} The trial court asked Mr. Cisternino if he was satisfied with the representation of his counsel. Mr. Cisternino responded he was not because his counsel was a "strongman for the prosecution," and that is why he accepted the state's plea bargain. The trial court asked Mr. Cisternino if he wanted new counsel appointed. He repeatedly said "no."

{¶11} Mr. Cisternino next told the trial court that he was a victim of an illegal search and seizure but that "he was going to be nice today" and "it was not worth the fight." According to Mr. Cisternino, he was harassed four days in a row by the Eastlake police on April 2, 3, 4, and 5, 2018. On the fourth day, the incident from which his indictment arose, Mr. Cisternino claimed he was assaulted and illegally searched for his failure to stop at a stop sign.

{¶12} The trial court told Mr. Cisternino to calm down, and that if he is unhappy with his counsel, new counsel could be appointed who would file the appropriate pretrial motions. Mr. Cisternino also stated he did not like his counsel's explanation of the plea deal offered by the state.

{¶13} The trial court offered to appoint new counsel on three separate occasions during the change of plea colloquy, and each time, Mr. Cisternino refused.

{¶14} The trial court asked Mr. Cisternino if he fully understood the effect of his plea and the full range of penalties for a second-degree misdemeanor. The trial court then explained what his plea of no contest would mean, together with the potential penalties. Mr. Cisternino again said "yes," and the trial court accepted his plea.

{¶15} The trial court proceeded to sentencing and asked Mr. Cisternino if he would like to say anything on his own behalf for the court to consider. Mr. Cisternino requested the 90-day jail sentence with credit for time served so that he could return to his other pending cases in Portage County.

{¶16} After considering the factors required under R.C. 2929.22 and the purposes and principles of sentencing, the statements of the prosecutor, and Mr. Cisternino's statements, the court sentenced Mr. Cisternino to 90 days in jail, with 81 days credit for time served, no probation, and fined him $100.

{¶17} Mr. Cisternino filed several motions for counsel to be appointed for his appeal and to vacate all fines and costs. Accordingly, the trial court appointed appellate counsel and denied his motions to vacate fines and costs.

{¶18} Mr. Cisternino timely filed an appeal, raising two assignments of error:

{¶19} "[1.] Defendant was denied effective assistance of counsel when jointly, no motion to suppress was filed on Defendant's behalf to ascertain whether his arrest, the search and seizure of his property, and any fruit gained thereof was illegally obtained and therefore inadmissible, and when counsel failed to apprise Defendant of any reason or explanation for the failure to file a motion to suppress on Defendant's behalf.

5

{¶20} "[2.] The trial court abused its discretion by accepting Appellant's 'no contest' plea in spite of his complaints regarding his appointed counsel and clear misunderstanding of the legal process."

**Effective Assistance of Counsel**

{¶21} In his first assignment of error, Mr. Cisternino argues he was deprived of the effective assistance of counsel because his counsel failed to adequately and reasonably advise him of the reasons not to file a motion to suppress, or conversely, failing to file a motion to suppress without providing any legal reason or explanation at all. We disagree with Mr. Cisternino's contention because he knowingly, intelligently, and voluntarily made his plea of no contest after declining three times to have new counsel appointed.

{¶22} "Ineffective assistance of counsel is a proper basis for seeking post-sentence withdrawal of a guilty plea." (Citations omitted.) *State v. Gibson*, 11th Dist. Portage No. 2007-P-0021, 2007-Ohio-6926, ¶26. "In order to prevail on an ineffective assistance of counsel claim, a petitioner must satisfy the two-prong test set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 694. * * * Thus, appellant must show that counsel's performance was deficient and 'must also show prejudice resulting from the deficient performance.'" (Citations omitted.) *Id.*

{¶23} "In analyzing a claim of ineffective assistance of counsel, '[w]e need not address the two prongs of appellant's ineffective assistance claim in the order set forth in *Strickland*." (Citation omitted.) *Id.* at ¶27. Thus, "'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim

6

is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" (Citations omitted.) *Id.*

{¶24} Mr. Cisternino argues that it is clear from the record of the change of plea hearing that he did not understand the legal process up to the point of plea and sentencing and did not trust the advice of his counsel.

{¶25} The trial court, however, answered all of Mr. Cisternino's questions, which centered around the legal process relating to his indictment, the charges that were not included in the indictment, and the return of the case to the municipal court. When Mr. Cisternino expressed his dissatisfaction with his counsel, apparently based on counsel's assessment and explanation of the amount of jail time he could face, the trial court asked him if he would like new counsel appointed and, in fact, did so at three different points in the hearing. The trial court also explained that it is counsel's duty to explain "where the state is coming from in terms of the [plea] offer * * * to present you with * * * all of the options." Indeed, his counsel would be remiss not to explain the state's strategy and the likely outcome of a trial. *See State v. Hayes*, 6th Dist. Lucas No. L-14-1249, 2016-Ohio-330, ¶13 (appellant was free to disregard the advice of counsel after counsel informed him of what counsel believed would be the likely outcome of a trial).

{¶26} Quite frankly, Mr. Cisternino cannot now argue that but for his counsel's assistance he would have filed a motion to suppress or would have decided differently as to his plea when he repeatedly rejected the opportunity to have the matter continued and new counsel appointed so that the pretrial motions he sought could be filed. Mr. Cisternino failed to present any evidence to support his allegations that his counsel was

7

deficient and that but for his counsel's deficient performance, he would have pleaded differently.

{¶27} Mr. Cisternino's first assignment of error is without merit.

## Crim.R. 11(C)(2)

{¶28} In his second assignment of error, Mr. Cisternino argues the trial court abused its discretion in accepting his plea of no contest because it was not made knowingly, intelligently, or voluntarily due to his complaints regarding his appointed counsel and his clear misunderstanding of the legal process.

{¶29} A trial court's obligations in accepting a plea depends upon the level of offense to which the defendant is pleading. *State v. Jones*, 116 Ohio St.3d 211, 2007-Ohio-6093, ¶6, citing *State v. Watkins*, 99 Ohio St.3d 12, 2003-Ohio-2419, ¶25. A petty offense is defined in Crim.R. 2(D) as a "misdemeanor other than [a] serious offense." *Id.* at ¶11, citing Crim.R. 2(D). A "serious offense" carries a period of confinement for more than six months. *Id.,* citing Crim.R. 2(C). For a petty offense, the court is instructed pursuant to Crim.R. 11(E) that it "'may refuse to accept a plea of guilty or no contest, and shall not accept such pleas without first informing the defendant of the effect of the plea of guilty, no contest, and not guilty.'" *Id.* at ¶11, quoting Crim.R. 11(E).

{¶30} Mr. Cisternino pleaded guilty to a petty offense, a misdemeanor that carries a maximum 90-day term of confinement. Thus, the trial court was only required to inform Mr. Cisternino of the effect of his plea. Although the court was not required to, it went above and beyond the statutory requirements of accepting a misdemeanor plea, by addressing him personally and determining whether his plea was voluntary.

8

{¶31} The gist of Mr. Cisternino's argument is that because he asked the trial court for clarification on the indictment process and expressed his dissatisfaction with counsel, the trial court erred in accepting his plea. The trial court, however, answered Mr. Cisternino's questions, allowed him to speak quite freely as to his dissatisfaction, explained counsel's duty to explain the state's actions so Mr. Cisternino would understand the risks and benefits of accepting a plea bargain, and asked three times if Mr. Cisternino wanted a continuance and new counsel appointed. Mr. Cisternino repeatedly declined. *See State v. Madeline*, 11th Dist. Trumbull No. 2000-T-0156, 2002 WL 445036, 4-5 (Mar.22, 2002) (Appellant's claims that trial counsel failed to consult with him, return telephone calls, investigate, participate in discovery, and file basic pretrial motions were without merit since he failed to present any evidence to support his allegations. This is especially so since he had the opportunity to inform the court of his attorney's deficiencies but signed a written guilty plea freely and voluntarily).

{¶32} The trial court engaged in an extensive colloquy, more than is statutorily required for a petty offense, with Mr. Cisternino to ensure that he understood the charge against him; he was making the plea voluntarily; and he was aware he was giving up the rights to a jury trial, confrontation, and a proof beyond a reasonable doubt. Simply because Mr. Cisternino suffers from post-decision dissonance does not mean we can find the trial court erred in accepting Mr. Cisternino's plea of no contest since he was fully informed and given the option of a continuance and new counsel.

{¶33} Finally, Mr. Cisternino argues, without support, that the trial court failed to make findings that he knowingly, voluntarily, and intelligently waived his right to new

9

counsel and that he knowingly, voluntarily, and intelligently waived "any of his rights," in violation of Crim.R. 11 and Crim.R. 44.

**{¶34}** At the outset, we note there is no "right to new counsel." *See State v. Scott*, 7th Dist. Mahoning No. 13 MA 47, 2014-Ohio-2993, ¶22 ("[A]ny request to change representation must be both timely and made in good faith, and is subject to the discretion of the trial court. There is no legal requirement that the trial court engage in any specific inquiry as to the reason a defendant wishes to seek other retained counsel.").

**{¶35}** Furthermore, there is no requirement for the trial court to make findings of a waiver of counsel. Instead, the waiver of counsel, pursuant to Crim.R. 44(C), "shall be in open court and the advice and waiver shall be recorded * * * ." *See also State v. Boughner*, 11th Dist. Geauga No. 98-G-2161, 1999 WL 1297606, 6 (the waiver of the right to counsel must affirmatively appear on the record). The rule is clear that it is the duty of the trial court to advise and the duty of the defendant to affirmatively state he or she elects waiver. There is no requirement for the trial court to make findings beyond the requirement that the court's advice and the defendant's response be made in open court and recorded (in serious offenses cases, the waiver shall be in writing).

**{¶36}** Similarly, the required Crim.R. 11 colloquy of Mr. Cisternino's rights to ensure his waiver was knowing, intelligent and voluntary was made in open court. As already noted, the trial court went above and beyond its statutory duty for petty offenses, informing Mr. Cisternino of the nature of the charge and maximum penalty involved, the effect of entering a guilty plea [or plea of no contest], and that he would be waiving his constitutional rights by entering the plea. *State v. Tate,* 11th Dist. Lake No. 2010-L-090, 2011-Ohio-3293, ¶32. There is no rule, Crim.R. 11 or otherwise, that requires the trial

10

court to make "findings" that Mr. Cisternino's waiver was knowing, voluntary, and intelligent. Under the totality of the circumstances, we cannot say Mr. Cisternino did not understand he was forgoing the opportunity to have new counsel appointed and waiving his constitutional rights when he pleaded no contest in this case.

{¶37} Mr. Cisternino's second assignment of error is without merit.

{¶38} The decision of the Willoughby Municipal Court is affirmed.


THOMAS R. WRIGHT, P.J.,

TIMOTHY P. CANNON, J.,

concur.

11