[Cite as *State v. Price*, 2014-Ohio-4696.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| | | Nos. 13AP-1088 |
| Plaintiff-Appellee, | : | (C.P.C. No. 12CR-4512) |
| | | 13AP-1089 |
| v. | : | (C.P.C. No. 13CR-3718) |
| | | and 13AP-1090 |
| Maurice T. Price, | : | (C.P.C. No. 13CR-4319) |
| Defendant-Appellant. | : | (ACCELERATED CALENDAR) |

D E C I S I O N

Rendered on October 23, 2014

*Ron O'Brien,* Prosecuting Attorney, and *Michael P. Walton,* for appellee.

*Barney DeBrosse, LLC,* and *David J. Fetters,* for appellant.

APPEALS from the Franklin County Court of Common Pleas

CONNOR, J.

{¶ 1} In this consolidated appeal, defendant-appellant, Maurice T. Price, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of one count of attempted aggravated burglary, with a three-year firearm specification, and ten counts of aggravated robbery with eight three-year firearm specifications. For the reasons that follow, we affirm the judgment of the trial court.

**A. Facts and Procedural History**

{¶ 2} The cases on appeal arise out of four separate robberies committed by appellant on three different dates. At appellant's two plea hearings, the prosecutor set out the basic facts underlying the four incidents. The first incident occurred on December 30, 2011, at approximately 9:00 p.m. On that evening, appellant approached his victim in a

store parking lot armed with a knife. He ordered the victim to the ground and took his credit cards, cell phone and some cash.

{¶ 3}  The second incident occurred on July 22, 2012. On that occasion, appellant's brother, Anthony Price, robbed a Red Skye cell phone store on High Street in Whitehall.  An investigation by the Columbus Police Department ("CPD") revealed that appellant "helped plan and knew the location of a new safe in the back room." (Nov. 25, 2013, Tr. 12.)

{¶ 4}  The third and fourth incidents occurred on August 26, 2012. On that evening, appellant committed numerous robberies with Anthony and his other brother, Joshua Price.  At around 9:30 p.m., Joshua pointed a gun at an employee of Noodles & Company, as he took trash out to the dumpster. When the victim turned and ran toward the store, Joshua gave chase threatening to shoot the victim if he did not stop. When the victim rounded the storefront, he was met by appellant and Anthony Price.

{¶ 5}  The Store Manager, John Lane, saw the three armed men from inside the store. When Lane opened the door, he saw the three men approaching with one of the men pointing a gun at the victim's head. Lane heard one of the men say "we're killing." (June 11, 2013, Tr. 5.) Lane immediately locked the door and called police. At that point, the three men threw the victim to the ground and fled the parking lot in a motor vehicle. Lane described the vehicle to police as a dark blue Kia Amanti, and he gave CPD a partial license plate number of "FPN."

{¶ 6}  Approximately one hour later, at a nearby Chipotle, two store employees were taking out the trash when Joshua confronted them with a hand gun. Appellant and Anthony then emerged from the bushes pointing hand guns at the two victims. The three men ordered the two victims to the ground and held guns to their heads while they asked if there had been a money drop and whether the two were store managers. The three suspects took the two victims back inside the store at gunpoint. Joshua and Anthony forced the first two victims and a third employee into the walk-in cooler and robbed them of their personal property. Joshua then robbed another employee and placed her in the cooler with the other victims.

{¶ 7}  Meanwhile, appellant confronted two other store employees in the store manager's office as they counted the money taken in that day. Appellant stole that money

and the three men put the two store managers in the cooler with the other victims. The men told the victims to wait 20 minutes before calling police. After waiting about ten minutes, one of the victims called police.

{¶ 8}   Upper Arlington Police Officer, J. Kulp, heard a call go out about a dark blue Kia Amanti with the partial license plate number "FPN" and he ran the number through the Ohio LEADS system.[1] Kulp discovered a vehicle registered to Joshua Price fitting that description with a license plate number of FPN7214. Officers from CPD proceeded to Joshua's address and saw the suspect's vehicle sitting in the driveway.

{¶ 9}   When the three suspects subsequently left the residence in the vehicle, CPD stopped the vehicle and arrested all three occupants. A search of the vehicle uncovered evidence linking appellant to the robbery at Chipotle. Victim identification, witness accounts and other physical evidence tied appellant to the robberies at Noodles & Company, Red Skye, and the earlier parking-lot robbery on December 30, 2011.

{¶ 10} As a result of these incidents, a Franklin County Grand Jury issued three indictments against appellant, charging him with more than 40 felonies, including aggravated robbery, robbery, aggravated burglary, attempted aggravated burglary, and kidnapping, with a total of ten firearm specifications.[2] On September 5, 2012, the Grand Jury indicted appellant in case No. 12CR-4512, on charges arising from the August 26, 2012 robberies at Noodles & Company and Chipotle. On June 11, 2013, the trial court conducted a plea hearing relative to those charges whereupon appellant pleaded guilty to attempted aggravated burglary, with a firearm specification, and eight counts of aggravated robbery, each with a firearm specification.

{¶ 11}  Thereafter, on July 16, 2013, the Grand Jury indicted appellant in case No. 13CR-3718 on multiple felony charges, including aggravated robbery, with a three-year firearm specification. On August 15, 2013, the Grand Jury indicted appellant in case No. 13CR-4319, for aggravated robbery and tampering with evidence in connection with the parking-lot robbery on December 30, 2011.

{¶ 12} On November 25, 2013, the trial court combined the plea hearing in case Nos. 13CR-3718 and 13CR-4319 with the sentencing hearing in all three of the cases. As a

---

[1] Law Enforcement Automated Data System.
[2] 12CR-4512, 13CR-3718 and 13CR-4319.

result of that hearing, appellant pleaded guilty to the charges in case Nos. 13CR-3718 and 13CR-4319, and the trial court sentenced him on both of those cases as well as case No. 12CR-4512. Specifically, the trial court sentenced appellant to a prison term of three years each on seven aggravated robbery convictions and four years for aggravated robbery as charged in Count 8 of the indictment in case No. 12CR-4512. The trial court ordered appellant to serve consecutive three-year prison terms on four of the eight firearm specifications and ordered appellant to serve three of the aggravated robbery convictions consecutively to each other and to the firearm specifications. Finally, the trial court ordered appellant to serve the prison terms for the remaining convictions concurrently with each other and with the convictions in the other two cases, for a total prison term of 22 years. At the request of the State, the trial court dismissed all other counts in the indictments.

{¶ 13} Appellant filed a timely notice of appeal to this court on December 27, 2013.

## B. Assignments of Error

{¶ 14} Appellant assigns the following as error:

> [I.] The trial court erred by sentencing Mr. Price to consecutive sentences without making the findings of fact required by R.C. 2929.14(C)(4).

> [II.] During the plea colloquy, the trial court erred by misstating how the firearm specifications would be sentenced, and ultimately sentenced Mr. Price beyond the possible range mentioned in the plea colloquy.

> [III.] Mr. Price's guilty pleas in all three cases were not made knowingly, intelligently, and voluntarily because the State unfairly induced Mr. Price to plead guilty in the 12 CR 4512 case without informing him of additional pending charges that the State intended to bring.

## C. Standard of Review

{¶ 15} We will presume that a guilty plea is neither knowing nor voluntary when the record shows that the trial court failed to adequately inform a defendant of his constitutional rights. *State v. Williams*, 10th Dist. No. 10AP-1135, 2011-Ohio-6231, ¶ 36, citing *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, ¶ 12. However, a defendant's understanding of the maximum penalty is not constitutionally required for a knowing,

intelligent, and voluntary plea. *Id.,* citing *State v. Johnson*, 40 Ohio St.3d 130, 133 (1988). Accordingly, when we consider appellant's contention that his guilty plea is not knowing, intelligent and voluntary because the trial court failed to correctly inform him of the maximum sentence, we must determine whether the trial court substantially complied with the provisions of Crim.R. 11(C)(2)(a).  *State v. Vinson,* 10th Dist. No. 08AP-903, 2009-Ohio-3240, ¶ 6. Substantial compliance means that, under the totality of the circumstances, appellant subjectively understood the implications of his plea and the rights he waived. *Id.,* citing *State v. Carter,* 60 Ohio St.2d 34, 38 (1979). Additionally, a failure to comply with Crim.R. 11(C) with regard to non-constitutional rights does not invalidate a plea unless the defendant suffers prejudice. *Id. See also State v. Phipps,* 10th Dist. No. 13AP-640, 2014-Ohio-2905. The test for prejudice is "whether the plea would have otherwise been made." *Id.*

{¶ 16} With respect to the imposition of consecutive sentences, we have consistently determined " 'that when the record demonstrates that the trial court failed to make the findings required by R.C. 2929.14(C)(4) before imposing consecutive sentences on multiple offenses, "appellant's sentence is contrary to law and constitutes plain error." ' " *State v. F.R.*, 10th Dist. No. 13AP-525, 2014-Ohio-799, quoting *State v. Wilson*, 10th Dist. No. 12AP-551, 2013-Ohio-1520, ¶ 18. When the trial court makes the required findings, an appellate court may overturn the imposition of consecutive sentences only if it finds, clearly and convincingly, that the record does not support the sentencing court's findings, or that the sentence is otherwise contrary to law. R.C. 2953.08(G); *State v. Adams*, 10th Dist. No. 13AP-783, 2014-Ohio-1809, ¶ 7.

## D. Legal Analysis

{¶ 17} For purposes of clarity, we will first consider appellant's second and third assignments of error challenging the validity of his guilty plea.

### 1. Guilty Plea

{¶ 18} When the trial judge addressed appellant at his initial plea hearing he informed him that "[d]epending on how the law is argued, there's going to be a minimum of at least one firearm specification, possibly three." (June 11, 2013, Tr. 11-12.) In appellant's second assignment of error, appellant contends that his plea of guilty was not knowing, intelligent and voluntary because the trial court misinformed him that he could

impose a consecutive sentence on "at least one * * * possibly three" of the firearm specifications, when in fact, Ohio law required that the trial court impose a consecutive sentence for at least four of the firearm specifications. *See State v. Price*, 10th Dist. No. 13AP-1085, 2014-Ohio-4065, ¶ 11.[3] Under the statutory sentencing scheme, because at least two of appellant's convictions for aggravated robbery arise from the incident at Chipotle, and at least two others arise from the separate incident at Noodles & Company, the trial court was legally required to impose a consecutive three-year prison term for at least four of the attendant firearm specifications. *Id.*[4]

{¶ 19} Crim.R. 11(C) provides, in relevant part:

> (2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
>
> (a) Determining that the defendant is making the plea voluntarily, with *understanding of the nature of the charges and of the maximum penalty involved*, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(Emphasis added.)

{¶ 20} While we agree that the trial court incorrectly informed appellant that he faced "at least one * * * possibly three" consecutive prison terms for the firearm specifications, the record shows that appellant, nevertheless, understood the maximum penalty involved.  Indeed, the transcript of the June 11, 2013 plea hearing demonstrates that the trial court expressly informed appellant that the prison terms imposed on each of the three-year firearm specifications are mandatory and that such prison terms are consecutive to the sentence imposed on the underlying offenses. Further, the signed guilty plea form in case No. 12CR-4512 specifically advised appellant that he was pleading guilty

---

[3] R.C. 2929.14(B)(1)(g) provides: "If an offender * * * pleads guilty to two or more felonies, if one or more of those felonies are * * * aggravated robbery, * * * and if the offender * * * pleads guilty to a [firearm] specification * * * in connection with two or more of the felonies, the sentencing court shall impose on the offender the [mandatory three-year] prison term * * * for each of the two most serious specifications of which the offender * * * pleads guilty and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications."

[4] Appealed to this court by appellant's brother and co-defendant, Joshua L. Price.

to a total of nine three-year firearm specifications and that R.C. 2929.13(F) required mandatory prison terms for each firearm specification. The form specifically states: "I understand the maximum prison term(s) for my offense(s) to be as follows: Up to 11 years on each F1, up to 8 years on the F2, with an additional 3 year firearm specification on each count." Moreover, during the plea hearing on June 11, 2013, the trial court advised appellant that if a consecutive sentence were imposed "the minimum prison term is 26 years [and] goes up to 96 years." (Tr. 11.) As noted above, the trial court imposed a prison term of 22 years.

{¶ 21} In *Phipps*, the trial court failed to inform appellant that the prison term for firearm specifications was to be served consecutively to the prison term for appellant's other felony convictions. *Id.* at ¶ 25. In his appeal to this court, we found that even though the trial court misinformed appellant regarding the maximum sentence, appellant's plea was still valid inasmuch as appellant failed to demonstrate prejudice resulting from the trial court error. *Id.* at ¶ 26. In so holding, we noted that the record contained no evidence that appellant would not have pleaded guilty had the trial court correctly informed him of the maximum prison term; that appellant's guilty plea resulted in the dismissal of 20 additional felony counts, many of which carried firearm specifications; and that the record contained no evidence indicating appellant did not understand the consequences of his decision to plead guilty. *Id.*

{¶ 22} This case stands on similar footing to *Phipps*. Appellant has pointed to nothing in this record suggesting that he would not have pleaded guilty had the trial court correctly informed him that he faced a consecutive prison term on 4 of the firearm specifications. Moreover, appellant's guilty plea resulted in the dismissal of more than 30 counts in the 3 indictments as well as the attendant firearm specifications. Though the trial court convicted appellant of the 5 other firearm specifications to which he pleaded guilty, the trial court elected to impose concurrent prison terms for those convictions. Finally, there is no indication in the transcript of the 2 plea hearings, or elsewhere in the record, that appellant lacked understanding of the maximum penalty he faced. Appellant did not ask any questions of the court during the plea colloquy nor did his counsel interpose any relevant objections.

{¶ 23} In short, the record demonstrates substantial compliance with the provision of Crim.R. 11(C)(2)(a). Accordingly, appellant's second assignment of error is overruled.

{¶ 24} In his third assignment of error, appellant argues that his plea of guilty in case No. 12CR-4512 could not have been knowing, intelligent and voluntary because he had not been informed of the pending indictments in case Nos. 13CR-3718 and 13CR-4319. Appellant also argues that his plea of guilty in case Nos. 13CR-3718 and 13CR-4319 was not voluntary inasmuch as he had no choice but to plead guilty to those charges having already pleaded guilty to the more serious charges in case No. 12CR-4512.

{¶ 25} Although appellant claims that the trial court erred in accepting his guilty plea in each case, our review of the plea colloquy in all three cases reveals that the trial court complied with Crim.R. 11 and that appellant entered a knowing, intelligent and voluntary plea of guilty in each case. Indeed, the record suggests that appellant's plea was the result of a joint effort by the parties and the court:

> I needed to make the sentence severe enough to show how serious what it was that you did. The fact that you're from a good family doesn't make the victims feel any better. I can't imagine what it must be like to have a gun stuck at your head.
>
> But yet I wanted to temper it with some sort of mercy. *I think the sentences that we've crafted here together meets that.*

(Emphasis added.) (Nov. 25, 2013 Sentencing Hearing, Tr. 32.)

{¶ 26} In our opinion, appellant's third assignment of error alleges either prosecutorial misconduct or ineffective assistance of counsel, rather than trial court error. And, when viewed in the proper context, appellant's argument is both factually and legally flawed.

{¶ 27} First, the record shows that the prosecutor informed appellant's counsel of the other possible charges prior to the June 11, 2013 plea hearing. The transcript contains the following exchange:

> [The Court:] Anything else on behalf of the state?
>
> Mr. Zeyen: Only, Your Honor, that defense counsel has been made aware of the possible charges involving cell phone stores that have not yet been filed yet. Whatever comes of that, that is not part of this deal here.

The Court: Anything else on behalf of the defendant?

Mr. Rigg: No, Your Honor.

(June 11, 2013 Plea Hearing, Tr. 15.)

{¶ 28} The above-cited exchange also shows that appellant's counsel knew of the other possible charges before he advised appellant to enter a plea of guilty in case No. 12CR-4512. Although appellant submits that the record does not affirmatively show that his counsel made him aware of the other charges prior to the time he entered his plea in case No. 12CR-4512, proof of such a fact necessarily exists outside the record. Such evidence, if it exists, is not an appropriate matter for this court to consider in a direct appeal. Moreover, appellant never moved the court to withdraw his guilty plea after the Grand Jury handed down the other two indictments even though he had ample time before the November 25, 2013 sentencing hearing in which to do so.

{¶ 29} In short, the record shows that appellant's guilty plea was a knowing, intelligent and voluntary waiver of his constitutional and statutory rights. Accordingly, appellant's third assignment of error is overruled.

## 2. Consecutive Sentence

{¶ 30} In his first assignment of error, appellant contends that the trial court failed to make the findings of fact that are necessary to sustain a consecutive sentence for attempted aggravated burglary as charged in Count 1 of the indictment and the two convictions for aggravated robbery as charged in Counts 7 and 8 of the indictment. Counts 7 and 8 of the indictment pertain to the robbery and burglary at Chipotle and Count 1 arises out of the Noodles & Company robbery.

{¶ 31} Pursuant to R.C. 2929.14(C)(4), as amended by H.B. No. 86, in order to impose a consecutive sentence, the trial court is required to make at least three distinct findings: (1) that consecutive sentences are necessary to protect the public from future crime *or* to punish the offender; (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) that one of the subsections (a), (b) or (c) applies. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177. *See also Adams* at ¶15, citing *State v. Bailey,* 10th Dist.

No. 12AP-699, 2013-Ohio-3596, ¶ 43. The relevant subsection in this case is R.C. 2929.14(C)(4)(b), which reads as follows: "At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct."

{¶ 32} The trial court made the following findings when it imposed a consecutive sentence:

> [THE COURT:] This is one of the most difficult, saddest cases I can remember dealing with in my years on either this bench or any bench because of that. I mean, you have always appeared as three nice young men from a good family. And I can't figure out what happened or what you were thinking. I guess I could figure out the event at most just a dumb decision. You go out there and live a TV show or something. But then it goes bad. And you get away. You think why in the world didn't you just go: Oh my gosh. We got away home free. We made a stupid mistake. Let's calm down. Instead you turned around and did it again that very night.
>
> Again I can't remember working any harder trying to fashion a sentence that I thought was fair. I could have gotten 50 years on this case for each of you. And there's a couple of my colleagues that would have gotten to 50 and kept on going. I mean that sincerely. I hope you all appreciate what your attorneys did for you. I hope I was a part of that. The question is what Mr. Thomas said: Whether you appreciate it today. Hopefully you will some day, because it really was a very, very difficult case for me.
>
> I needed to make the sentence severe enough to show how serious what it was that you did. The fact that you're from a good family doesn't make the victims feel any better. I can't imagine what it must be like to have a gun stuck at your head.
>
> But yet I wanted to temper it with some sort of mercy. I think the sentences that we've crafted here together meets that.

(Nov. 25, 2013 Sentencing Hearing, Tr. 31-32.)

{¶ 33} Appellant argues that the trial court did not make the required statutory findings in this case inasmuch as the transcript does not show that the trial court

employed the statutory language in handing down a consecutive sentence. In *Bonnell,* the Supreme Court of Ohio made the following comments regarding a consecutive sentence:

> In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings. Nor is it required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated in the sentencing entry.

*Id.* at ¶ 37.

{¶ 34} Although we agree that the trial court did not recite the statutory language, "a word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.* at ¶ 29. Our review of the comments made by the trial court at the sentencing hearing convinces us that the trial court engaged in the correct analysis and made the required findings. We are also able to determine that the record contains support for the trial court's findings.

{¶ 35} With respect to the first requirement of the statute, the trial court must find either that consecutive sentences are necessary to protect the public from future crime *or* to punish the offender. In this instance, the trial judge specifically stated: "I needed to make the sentence sever enough to show how serious what it was that you did.  The fact that you're from a good family doesn't make the victims feel any better.  I can't imagine what it must be like to have a gun stuck at your head." In our opinion, the trial court made a finding that a consecutive sentence was necessary to punish appellant given the seriousness of the offenses he committed.  *See Id.* at ¶ 33 ("We can discern from the trial court's statement that Bonnell had 'shown very little respect for society and the rules of society' that it found a need to protect the public from future crime or to punish Bonnell.").

{¶ 36} With regard to the proportionality analysis required by R.C. 2929.24, the trial judge made the following statement: "I can't remember working any harder trying to

fashion a sentence that I thought was fair. I could have gotten 50 years on this case for each of you. And there's a couple of my colleagues that would have gotten to 50 and kept on going. I mean that sincerely. * * * But yet I wanted to temper it with some sort of mercy. I think the sentences that we've crafted here together meets that."

{¶ 37} These comments demonstrate that the trial judge engaged in the correct proportionality analysis when imposing a consecutive sentence. Indeed, it is evident that the trial judge weighed the seriousness of appellant's conduct and the danger such conduct posed to the public against the concept of "mercy," and that he crafted a sentence that adequately punished appellant for his crimes. The fact that the trial court did not use the precise statutory language in making its finding does not mean that the trial court failed to engage in the correct proportionality analysis. *See Adams* ("[T]he trial court's use of the phrase 'does not discredit the conduct or danger imposed by the defendant' shows that the trial court employed the required proportionality analysis in imposing a consecutive sentence * * * even though the trial court eschewed the phrase 'not disproportionate.' "). *Id.* at ¶ 21.

{¶ 38} While appellant maintains that a 22-year sentence is disproportionate to the seriousness of the offenses, as we have previously noted in this decision, the trial court was required to impose a consecutive prison term on at least 4 of the 3-year firearm specifications. *Price*; R.C. 2929.14(B)(1)(a) and (g). Consequently, the mandatory firearm specifications make up more than half of appellant's prison term.

{¶ 39} Finally, with regard to the requirements of R.C. 2929.14(C)(4)(b), the trial court found as follows: "And I can't figure out what happened or what you were thinking. I guess I could figure out the event at most just a dumb decision. You go out there and live a TV show or something. But then it goes bad. And you get away. You think why in the world didn't you just go: Oh my gosh. We got away home free. We made a stupid mistake. Let's calm down. *Instead you turned around and did it again that very night.*" (Emphasis added.) These comments constitute a finding that appellant committed his crimes as part of one or more courses of conduct. *See State v. Oliver,* 3d Dist. No. 16-14-02, 2014-Ohio-3982, ¶ 13 (Trial court's statement that "the unlawful activity was repeated" and "recurring" is sufficient to satisfy the requirements of R.C. 2929.14(C)(4)(b)).

{¶ 40} Additionally, as noted above, the trial court specifically stated: "I needed to make the sentence sever enough to show how serious what it was that you did. * * * I can't imagine what it's like to have a gun pointed at your head." This comment shows that the trial judge considered the nature of the harm appellant caused to his numerous victims as "great and unusual" and that he considered that harm in determining that a consecutive sentence was appropriate. *Oliver* at ¶ 13 (Trial court's statement that defendant "raped a 10 year old child and that he ultimately impregnated her resulting in a cesarean section to deliver the child" indicates a finding of great and unusual harm). The record in this case confirms that appellant pointed a handgun at the head of multiple victims during the commission of the robberies on August 26, 2012.

{¶ 41} In short, even though the trial court did not employ the precise statutory language in making its findings in support of a consecutive sentence, we are able to discern from the trial court's commentary that it engaged in the appropriate statutory analysis and did, in fact, make the findings required by R.C. 2929.14(C)(4). We further conclude that the facts of the case, as set out by the prosecutor, provide adequate support for each of the factual findings made by the trial court in imposing a consecutive sentence. Accordingly, appellant's first assignment of error is overruled.

{¶ 42} We note, however, that the relevant portion of the trial court's November 27, 2013 judgment entry states only that "the Court has weighed the factors as set forth in the applicable provisions of * * * R.C. 2929.14." Thus, the trial court failed to incorporate the relevant findings into the sentencing entry. Pursuant to *Bonnell,* "[a] trial court's inadvertent failure to incorporate the statutory findings in the sentencing entry after properly making those findings at the sentencing hearing does not render the sentence contrary to law; rather, such a clerical mistake may be corrected by the court through a nunc pro tunc entry to reflect what actually occurred in open court." *Id.* at ¶ 30. Accordingly, we shall remand this case to the trial court for "a nunc pro tunc entry incorporating findings stated on the record." *Id.* at ¶ 31.

**E. Conclusion**

{¶ 43} Having overruled each of appellant's assignments of error, but having found that the trial court's judgment entry contains a clerical error, we affirm the judgment of the Franklin County Court of Common Pleas and remand the case for the

issuance of a corrected judgment entry consistent with this decision and the rule of law in *Bonnell.*

*Judgment affirmed;*
*case remanded with instructions.*

**DORRIAN and O'GRADY, JJ., concur.**

_____