[Cite as *State v. Quigley*, 2025-Ohio-2654.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                              :

      Plaintiff-Appellee,         :

                                      No. 24AP-523

v.                                         :        (C.P.C. No. 23CR-5600)

Dennis B. Quigley,                         :        (REGULAR CALENDAR)

      Defendant-Appellant.        :

---

D E C I S I O N

Rendered on July 29, 2025

---

**On brief:** *Shayla D. Favor*, Prosecuting Attorney, and *Sheryl L. Prichard*, for appellee. **Argued:** *Sheryl L. Prichard*.

**On brief:** *Colin Peter Law LLC,* and *Colin E. Peters*, for appellant. **Argued:** *Colin E. Peters*.

---

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Defendant-appellant, Dennis B. Quigley, appeals from the judgment of the Franklin County Court of Common Pleas sentencing him to an aggregate 240 month term of imprisonment following entry of his guilty plea to four counts of sexual battery, in violation of R.C. 2907.03, each count a felony of the third degree, and two counts of sexual imposition, in violation of R.C. 2907.06, each count a misdemeanor of the third degree. For the reasons explained below, we affirm.

{¶ 2} On October 31, 2023, appellant Quigley was indicted for seven counts of sexual battery in violation of R.C. 2907.03, each a felony of the third degree, and two counts

of sexual imposition in violation of R.C. 2907.06, each a misdemeanor of the third degree. Counts 1 through 6 pertained to alleged victim C.C. and Counts 7 through 9 pertained to alleged victim O.Z.  Appellant entered a plea of not guilty.

{¶ 3}    On May 16, 2024, appellant withdrew his not guilty plea and pleaded guilty to four counts of sexual battery (Counts 1, 2, 3, and 7, each a third-degree felony), and both counts of sexual imposition (Counts 8 and 9, each a third-degree misdemeanor.)  Three counts of sexual battery (Counts 4, 5, and 6) were dismissed in exchange for the plea.  There was no jointly recommended sentence. At the plea hearing, the following facts were presented.

{¶ 4}    Appellant was formerly a licensed independent social worker who worked as a therapist.[1]  One of the victims, "C.C.," began seeing appellant for therapy to heal from sexual abuse at the hands of her father as a young girl.  Appellant treated C.C. from 2013 until 2021.  C.C. reported that appellant initially began hugging C.C. when she would cry during sessions.  This behavior began in 2014.

{¶ 5}    C.C. reported that in 2015, appellant began massaging her shoulders and back at the end of sessions.  She reported that she felt extremely uncomfortable and would freeze when appellant touched her, and it triggered her PTSD (post-traumatic stress disorder). Eventually, he began reaching down her shirt and rubbing her breasts and nipples during sessions.  While appellant was touching her, C.C. would freeze, unable to move or say anything, based upon her fear and past trauma.

{¶ 6}    C.C. further reported that at some point in 2015, appellant placed his hands inside of her pants and rubbed her vagina.   This behavior then continued to occur at every visit [twice a week] from March 2015 until November 2019.  Appellant also had vaginal sex with C.C. during two separate office visits.  He also performed cunnilingus on C.C., and she performed fellatio on him.

{¶ 7}    The second victim, "O.Z.," began seeing appellant for therapy in or about April of 2018 to deal with a sexual assault that had occurred 20 years prior.  O.Z. reported that eventually, at the end of a visit, appellant asked her for a hug.  Although she complied, she felt it was not professional.

---

[1] Appellant voluntarily relinquished his state license to practice therapy prior to the indictment in this case.

{¶ 8}  O.Z. reported that at a later session, appellant began rubbing her back and then kissing her.  He then unzipped her pants and started rubbing her vagina.  O.Z. reported that she froze and was unable to move, citing her past trauma.

{¶ 9}  O.Z. further reported that at another subsequent session, appellant undressed her totally, that she laid in his lap, that he rubbed her breasts and nipples and that he instructed her to use a vibrator on herself.  O.Z. also performed fellatio on appellant in the women's restroom at the end of another session in November of 2018.

{¶ 10} At the conclusion of the plea hearing, the trial court accepted appellant's guilty plea and found appellant guilty of the counts as delineated previously.  The trial court then ordered a pre-sentence investigation ("PSI").  The following facts were presented in the PSI report.

{¶ 11} On November 28, 2022, detectives from the Columbus Division of Police ("CPD") interviewed appellant at CPD headquarters. During the interview, appellant admitted that both C.C. and O.Z. had been patients of his.  He further admitted that the acts for which he was indicted occurred during therapy sessions, for which he billed insurance companies.  At the time of the indictment, appellant was seventy years old, and during the time frames the acts were committed he was in his mid-sixties and the victims were in their thirties.

{¶ 12}  Appellant estimated that the acts of cunnilingus and fellatio between C.C. and himself occurred 6-10 times.  When detectives asked appellant why he rubbed C.C.'s breast and vagina, he stated, "it was a therapeutic touch" and he felt that if he stopped it would hurt C.C.'s therapy with him.  (PSI at 5; *see also* July 24, 2024 Sentencing Tr. at 48.) Appellant further stated that the acts with C.C. were all consensual.

{¶ 13} With respect to O.Z., appellant stated that "it was all her wanting sex from me" and denied any acts of cunnilingus on her.  (PSI at 5.)  Appellant admitted that at one time O.Z. was naked on the couch but stated "but I never touched her.  It was her using a vibrator on herself while I watched." *Id*.  Appellant further stated that O.Z. was "provocative" and when "the relationship did not come to fruition she became irritated and posted on a website."  (PSI at 5.)

{¶ 14} The PSI concludes with a statement made by appellant in response to the probation officer's inquiry as to whether he wanted to make any additional statements. His response was:

> I want to stress the importance of me not being sent to prison at my age. I am committed to the community. I need to be out so I can provide for my family and for [H]. I realize what I have done is wrong. It was not my intention to do any harm. I am extremely sorry for my behavior. I am committed to the community, and I need to provide for my family. I am truly sorry.

(PSI at 9.)

{¶ 15} On July 24, 2024 a sentencing hearing was held. At the hearing, the trial court heard victim impact statements from C.C., O.Z., and an attorney representing C.C. C.C. requested that appellant be sentenced to ten years in prison. The state also requested a sentence in excess of ten years.

{¶ 16} Counsel for appellant spoke on appellant's behalf and asked that the court impose a sentence of community control. Appellant made a statement acknowledging that the victims were "absolutely right" and that what he had done "was egregious and wrong." (Sentencing Tr. at 42.) He stated that "it's not my intention to blame the victims" and stated he was responsible for his actions. *Id.* He further stated, "I don't know what else I can say trying to bail myself out of the situation, but I would appreciate your consideration in . . . community control." *Id.*

{¶ 17} The trial court stated that it had thoroughly reviewed the PSI and appellant's sentencing memorandum and had listened to the statements of the victims and listened to the parties. The trial court referenced the principles and purposes of sentencing as set forth in R.C. 2929.11 and the seriousness and recidivism factors set forth in R.C. 2929.12, noted there was no joint recommendation, and further noted that there was no presumption for either community control or a prison sentence.

{¶ 18} The trial court proceeded to its analysis of the various factors it was required to consider. The trial court observed that although appellant stated in the courtroom that he did not blame the victims, the "presentence investigation tells a whole different story." (Sentencing Tr. at 43.)

{¶ 19} As for consideration of the likelihood of recidivism, the trial court acknowledged most of the factors were not present in appellant's case but that "I don't find any remorse for your actions [and] [y]our remorse is for being caught and having to explain to your family and the community the crimes that you committed." (Sentencing Tr. at 43.) The trial court specifically acknowledged that appellant had no prior criminal history as a juvenile or adult, but also stated, "I don't know that you were law-abiding in the prior years before this happened because, frankly, I understand that it takes some victims a long time to come forward. I don't know if you have any other victims. So I won't find that you do or do not have a prior -- prior number of years of law-abiding conduct because, frankly, we don't know." (Sentencing Tr. at 44.)

{¶ 20} Regarding consideration of the seriousness of the crimes, the trial court found many of the factors that indicate appellant's crimes are more serious than others of a similar nature. These included that appellant held a position of trust as a therapist and abused that position while being paid for it; that the victims sought treatment for past sexual trauma, but appellant's actions actually worsened that trauma; and that appellant's actions inflicted serious physical and psychological harm on the victims. The trial court specifically found the suggestion "that the victim induced or facilitated this offense is abhorrent and disgusting" and that there were no factors indicating that appellant's conduct was less serious than that ordinarily constituting the offense. (Sentencing Tr. at 45.) The trial court further stated that it found appellant's description of the conduct between himself and the victims as "consensual" to be disgusting, and that "[f]rankly, I think you got a benefit by not being charged with rape." *Id.* at 47.

{¶ 21} Finally, the trial court rejected appellant's contention that he was committed to the community—referenced both in the PSI and during appellant's statements at the sentencing hearing—stating that this was "just giving [appellant] more opportunity to groom people." (Sentencing Tr. at 50.) The court concluded its findings by expressing its disbelief that appellant had "learned anything from this" and that "[t]o come in here and say you finally learned something is bullshit. You knew damn well what you were doing. You used your power over these women to consistently abuse them and then you come in here and write into your presentence investigation that it's their fault. That doesn't fly here." *Id.* at 50-51.

{¶ 22} At the conclusion of the sentencing hearing, the trial court sentenced appellant to a maximum five-year prison term for each count of sexual battery, to run consecutively, for an aggregate prison term of 20 years. No jail time was imposed for the misdemeanors. Appellant was also ordered to register as a Tier III sex offender, and to pay court costs. Notably, there was no objection to the imposition of consecutive sentences or maximum sentences at the hearing.

{¶ 23} On July 30 2024, a separate restitution hearing was held. Appellant's counsel did not dispute the amount sought by the victim requesting restitution, and the trial court ordered restitution in the amount of $9,467.55.

{¶ 24} On August 12, 2024, the trial court issued its judgment entry reflecting the foregoing sentence and order of restitution. (Aug. 12, 2024 Jgmt. Entry.)

{¶ 25} Appellant now timely appeals from the judgment entry and sets forth the following two assignments of error for this court's review:

> [I]. The maximum, consecutive prison term imposed by the trial court was clearly and convincingly unsupported by the record and contrary to law.

> [II]. The sentence imposed by the trial court was cruel and unusual, in violation of Appellant's rights as guaranteed by the Eighth Amendment to the United States Constitution, and Article I, Section 9 of the Ohio Constitution.

{¶ 26} We begin by observing that pursuant to R.C. 2953.08(G)(2), an appellate court will reverse a trial court's sentencing decision "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. This court must "look to the record to determine whether the sentencing court considered and properly applied the statutory guidelines and whether the sentence is otherwise contrary to law." *State v. Reeves*, 2015-Ohio-3251, ¶ 4 (10th Dist.).

{¶ 27} In his first assignment of error, appellant contends the trial court erred because the record does not support the trial court's findings required to impose

consecutive sentences under R.C. 2929.14(C)(4) and 2929.41(A) and the maximum sentence under R.C. 2929.11 and 2929.12. We do not agree.

{¶ 28} First, regarding the imposition of consecutive sentences, we note that " '[u]nder Ohio law, absent an order requiring sentences to be served consecutively, terms of incarceration are to be served concurrently.' " *State v. Guy*, 2018-Ohio-4836, ¶ 56 (10th Dist.), quoting *State v. Sergent*, 2016-Ohio-2696, ¶ 16, citing R.C. 2929.41(A). A trial court may, in its discretion, impose consecutive sentences for multiple prison terms pursuant to R.C. 2929.14(C)(4). *Id.* Before imposing consecutive sentences, the trial court must find that: (1) the consecutive sentence is necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) at least one of the following:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4). Thus, pursuant to R.C. 2929.14(C)(4), in order to impose consecutive terms of imprisonment, a trial court is required to make at least three distinct findings: (1) that consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) that one of the subsections (a), (b), or (c) applies. *State v. Price*, 2014-Ohio-4696, ¶ 31 (10th Dist.), citing *State v. Bonnell*, 2014-Ohio-3177.

{¶ 29} In *Bonnell*, the Supreme Court of Ohio held that a trial court seeking to impose consecutive sentences must make the findings required by R.C. 2929.14(C)(4) "at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *Bonnell* at syllabus. Nor is the trial court "required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Id.* at ¶ 37. "[A] word-for-word recitation of the language of the statute is not required," and "as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.* at ¶ 29.

{¶ 30} "In determining whether the trial court engaged in the correct analysis, an appellate court 'may liberally review the entirety of the sentencing transcript to discern whether the trial court made the requisite findings.' " *State v. Hairston*, 2017-Ohio-8719, ¶ 8 (10th Dist.), quoting *State v. Stephen*, 2016-Ohio-4803, ¶ 22 (7th Dist.). Furthermore, "once the trial court makes the factual findings required by R.C. 2929.14(C)(4), an appellate court may overturn the imposition of consecutive sentences only if it finds, clearly and convincingly, that the record does not support the sentencing court's findings or that the sentence is otherwise contrary to law." *State v. Hargrove*, 2015-Ohio-3125, ¶ 22 (10th Dist.).

{¶ 31} Here, a review of the sentencing transcript readily reveals the trial court made all the factual findings required by R.C. 2929.14(C)(4) and that the trial court explained its reasoning for imposing consecutive sentences. Indeed, appellant concedes the trial court made the requisite findings under R.C. 2929.14(C)(4) at the sentencing hearing, and although the trial court erred by not incorporating those findings in the judgment entry, appellant further acknowledges this error is readily rectified by the trial court issuing a nunc pro tunc entry. [2]

{¶ 32} Furthermore, we do not find, clearly and convincingly, that the record fails to support the trial court's findings or that the sentence is otherwise contrary to law. Instead, contrary to appellant's assertion, we find there was more than ample evidence in the record

---

[2] At oral argument of this matter, the state likewise conceded that a limited remand was necessary in this case so the trial could issue a nunc pro tunc sentencing entry which properly incorporated the findings supporting consecutive sentences as required by *Bonnell*.

to support the trial court's findings and imposition of consecutive sentences under R.C. 2929.14(C)(4) and 2929.41(A) and as mandated by the Supreme Court in *Bonnell*. Thus, we reject appellant's contention that the trial court erred in imposing consecutive sentences.

{¶ 33} Appellant also contends in his first assignment of error that the trial court erred in imposing maximum sentences for his offenses for each count when the record did not support the findings of the court based on its consideration of the various factors set forth in R.C. 2929.11 and 2929.12. Again, we disagree.

{¶ 34} "A trial court's imposition of a maximum prison term is not contrary to law as long as the court sentences the offender within the statutory range for the offense, and in so doing, considers the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors set forth in R.C. 2929.12." *State v. J.L.H.*, 2019-Ohio 4999, ¶ 5 (10th Dist.), citing *State v. Santos*, 2016-Ohio-5845, ¶ 12 (8th Dist.). "Although a trial court must consider the factors in R.C. 2929.11 and 2929.12, there is no requirement that the court state its reasons for imposing a maximum sentence, or for imposing a particular sentence within the statutory range." *Id.* Likewise, "[t]here is no requirement in R.C. 2929.12 that the trial court states on the record it has considered the statutory criteria concerning seriousness and recidivism or even discussed them." *Id.*, citing *State v. Hayes*, 2019-Ohio-1629, ¶ 49 (5th Dist.), citing *State v. Polick*, 101 Ohio App.3d 428, 431 (4th Dist. 1995).

{¶ 35} As we have previously observed, the " ' "overriding purposes of felony sentencing are to protect the public from future crime and to punish the offender." ' " *J.L.H.*, 2019-Ohio 4999 at ¶ 6, quoting *State v. Smith*, 2015-Ohio-4225, ¶ 10 (3rd Dist.), quoting R.C. 2929.11(A). " 'In advancing these purposes, sentencing courts are instructed to "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." ' " *Id.*, quoting *Smith* at ¶ 10, quoting R.C. 2929.11(A). " 'In accordance with these principles, the trial court must consider the factors set forth in R.C. 2929.12(B)-(E) relating to the seriousness of the offender's conduct and the likelihood of the offender's recidivism.' " *Id.*, quoting *Smith* at ¶ 10, citing R.C. 2929.12(A). " ' "A sentencing court has broad discretion to determine the relative weight to assign the

sentencing factors in R.C. 2929.12." ' " *Id.* at ¶ 15, quoting *State v. Brimacombe*, 195 Ohio App.3d 524, 2011-Ohio-5032, ¶ 18 (6th Dist.), citing *State v. Arnett*, 88 Ohio St.3d 208, 215 (2000).

{¶ 36} Here, we find appellant's sentences are within the permissible statutory range, and appellant does not argue otherwise. Furthermore, the record shows the trial court properly considered the criteria found in R.C. 2929.11 and 2929.12 and clearly and convincingly supports the trial court's findings under R.C. 2929.11 and 2929.12. Additionally, it is settled that merely because the trial court imposed more than the minimum sentence for each offense does not render the imposition of sentence contrary to law. *State v. Maxwell*, 2019-Ohio-2191, ¶ 8 (10th Dist.), citing *State v. Robinson*, 2016-Ohio-4638, ¶ 18 (10th Dist.) (a trial court does not abuse its discretion in imposing the maximum sentence where that sentence is within the statutory range of permissible sentences) (further citation omitted).

{¶ 37} Furthermore, we are wholly unpersuaded by appellant's arguments that the record does not support the trial court's imposition of maximum sentences; that the maximum sentences were too harsh in relation to the seriousness of the crimes he committed; and that the record shows, based on comments made by the trial court at the sentencing hearing, that the trial court was biased against appellant and simply seeking to justify the imposition of maximum sentences. It is well-settled that although a judge must remain impartial, she is not precluded from making comments during the course of the proceedings:

> The judiciary must remain detached and neutral in any proceeding before it. *State v. Bayer* (1995), 102 Ohio App. 3d 172, 656 N.E.2d 1314. This does not mean, however, that a trial judge is precluded from making comments during the course of the proceedings. *State v. Thomas* (1973), 36 Ohio St. 2d 68, 71, 303 N.E.2d 882. When an issue is raised as to the appropriateness of a judge's comments, a reviewing court must determine whether the remarks were prejudicial to a defendant's right to a fair and impartial hearing. In *State v. Wade* (1978), 53 Ohio St. 2d 182, 373 N.E.2d 1244, the Supreme Court of Ohio set forth the following criteria to determine whether a trial court's remarks are prejudicial:
>
> (1) The burden of proof is placed upon the defendant to demonstrate prejudice, (2) it is presumed that the trial judge is

in the best position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to be considered in light of the circumstances under which they are made, (4) consideration is to be given to their possible effect upon the jury, and (5) to their possible impairment of the effectiveness of counsel. *Id.* at 188.

*State v. Harper*, 2001 Ohio App. LEXIS 5969, *2 (10th Dist. Dec. 31, 2001.)

{¶ 38} Upon review of the sentencing transcript, we do not find that the trial judge's comments displayed inappropriate bias toward appellant. Indeed, based on appellant's characterization of his sexual interactions with the victims as consensual and worse, that he blamed the victims for his own behavior, we find the evidence fully supports and justifies the trial court's legitimate concerns that appellant did not fully accept responsibility for his actions and failed to show true remorse. While this court does not condone the trial court's choice to use a vulgar term within the course of its comments expressing disbelief that appellant was truly remorseful of his actions, we do not find the comments in their totality indicate improper bias against appellant.

{¶ 39} Moreover, even assuming that any of the trial judge's remarks were inappropriate in a general sense, appellant has not demonstrated how he was prejudiced by the remarks. As noted above, appellant's sentences are within the permissible statutory range, and the trial court clearly stated its reasons for imposing the maximum sentences upon appellant. Upon considering the factors set out by the Supreme Court of Ohio in *Wade*, we conclude that appellant was not denied a fair sentencing hearing by the trial judge's comments. Thus, the trial court did not err in imposing the maximum sentences.

{¶ 40} Accordingly, based on all the foregoing, appellant's first assignment of error is overruled.

{¶ 41} In his second assignment of error, appellant asserts his sentence arises to cruel and unusual punishment in violation of both the United States Constitution and the Constitution of the State of Ohio. This assignment of error is meritless.

{¶ 42} The Eighth Amendment to the United States Constitution, as made applicable to the states through the Fourteenth Amendment, provides "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Eighth Amendment protects against torture or barbaric punishments, as well as punishments that are found to be disproportionate to the crimes committed. *State*

*v. Watkins*, 2018-Ohio-5137, ¶ 10 (10th Dist.). The Supreme Court of Ohio has observed that the protection against disproportionate punishments is a "central substantive guarantee of the Eighth Amendment." (Internal citations omitted.) *State v. Moore*, 2016-Ohio-8288, ¶ 31.

{¶ 43} Nevertheless, the Eighth Amendment does not require strict proportionality between the sentence and crime but instead forbids extreme sentences that would be considered "grossly disproportionate." *State v. Hairston*, 2008-Ohio-2338, ¶ 13. Punishments that are prohibited by the Eighth Amendment on proportionality grounds are ones that are " 'so disproportionate to the offense as to shock the moral sense of the community.' " *State v. Fraley*, 2022-Ohio-3270, ¶ 28 (12th Dist.), quoting *McDougle v. Maxwell*, 1 Ohio St.2d 68, 69 (1964). " ' "[C]ases in which cruel and unusual punishments have been found are limited to those involving sanctions which under the circumstances would be considered shocking to any reasonable person." ' " *State v. Treadwell*, 2020 Ohio App. LEXIS 1699, *10 (10th Dist. Apr. 30, 2020), quoting *State v. Weitbrecht*, 86 Ohio St.3d. 368, 371 (1999), quoting *McDougle* at 70. Furthermore, "[a]s a general rule, a sentence that fails within the terms of a valid statue cannot amount to a cruel and unusual punishment." *McDougle* at 69 (1964).

{¶ 44} In this case, we summarily reject appellant's assertion that his 20-year sentence amounts to cruel and unusual punishment. First, the sentence for each of the crimes committed clearly falls within the range permitted by statute. Therefore, as noted above, appellant's sentence cannot arise to cruel and unusual punishment. *McDougle* at 69.

{¶ 45} Moreover, appellant engaged in repeated behavior over the course of multiple years with two particularly vulnerable victims while he was in a position of trust and power. Indeed, he was keenly aware of the victims' vulnerabilities because he was *acting as their therapist*. But instead of providing the victims with counseling and therapy, he used his position of trust and power to manipulate the victims into engaging in repeated sex acts with him. We find such behavior to be heinous enough to justify the sentence imposed, and we reject appellant's argument that the sentence is disproportionate to the seriousness of his actions and resulting consequences.

{¶ 46} Accordingly, we overrule appellant's second assignment of error.

{¶ 47} Therefore, having overruled appellant's first and second assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas and remand the matter to that court for the limited purpose of entering a nunc pro tunc sentencing entry consistent with our discussion herein.

*Judgment affirmed*;
*case remanded with instructions.*

JAMISON, P.J., and MENTEL, J., concur.