[Cite as *State v. Stubbs*, 2014-Ohio-3791.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

STATE OF OHIO,  )
 )  CASE NO.    13 JE 31
PLAINTIFF-APPELLEE,  )
 )
VS.  )  O P I N I O N
 )
QUINTAE STUBBS,  )
 )
DEFENDANT-APPELLANT.  )

CHARACTER OF PROCEEDINGS:   Criminal Appeal from Common Pleas
 Court, Case No. 13CR99.

JUDGMENT:   Affirmed.

APPEARANCES:
For Plaintiff-Appellee:   Attorney Jane Hanlin
 Prosecuting Attorney
 16001 State Route 7
 Steubenville, Ohio  43952

For Defendant-Appellant:   Attorney Eric Reszke
 Suite 810, Sinclair Building
 100 North 4th Street
 Steubenville, Ohio  43952

JUDGES:
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

 Dated:  August 25, 2014

VUKOVICH, J.

{¶1}   Defendant-appellant Quintae Stubbs appeals after being convicted by a jury of having a weapon while under a disability in the Jefferson County Common Pleas Court.   Appellant raises two assignments of error arguing that the verdict is contrary to the manifest weight of the evidence, and that the trial court abused its discretion in sentencing him to 30 months imprisonment.  For the reasons expressed below, the judgment of the trial court is affirmed.

<u>STATEMENT OF THE CASE</u>

{¶2}   On May 23, 2013 Steubenville Police Officer Palmer had a brief encounter with appellant and Michaelis Forster at the Fort Steuben Mall after observing that Forster wore a completely unzipped hooded sweatshirt exposing his entire chest area, which is considered inappropriate attire for the premises.  Palmer asked Forster to either zip up the sweatshirt or leave the premises.  Forster then left the premises with Stubbs.

{¶3}   Because Stubbs exhibited nervous behavior and repeatedly asked if he could leave and whether he was "good here", Palmer called dispatch to inquire about his identity, describing him as a black male with facial tattoos.  Palmer learned that the man was Quintae Stubbs and that he had an active arrest warrant out of the Steubenville Municipal Court.  Palmer attempted to follow the men to the end of mall property, at which point several Steubenville officers joined the search.  After a lengthy search, Officer Ellis spotted the two men getting into a vehicle in a McDonald's parking lot.  Apparently, Stubbs recognized the people in the car, Joseph Ware and Tina McGee, and they agreed to drive him back to Steubenville for ten dollars.

{¶4}   After the car ventured onto the road, Ellis initiated a traffic stop.  He saw the person behind the driver's seat move towards the left and pull his hat down as though attempting to avoid identification.  When Officer Ellis approached the car, he observed Stubbs as the person in the backseat behind the driver's seat.  Forster was seated next to Stubbs, Ware was in the driver's seat, and McGee was in the front

passenger seat. Ware told the officers that the car belonged to a friend and that he and McGee had been in possession of the car for a short period of time.

**{¶5}** Officer Ellis arrested Stubbs in accordance with the active bench warrant and conducted a search of the vehicle, which was said to be in disarray. He found a black handgun inside an unzipped pink purse on the backseat floor located directly in front of and below where Stubbs had been sitting. The firearm had a live round in the chamber and additional rounds in the magazine. According to testimony from Ware, the purse had been lying on Stubbs' seat before he entered the vehicle. Ware also testified that he did not see a gun when he previously observed the purse on the seat.

**{¶6}** McGee testified that she observed Stubbs move around in the backseat and pull his hat down after seeing the emergency lights behind them. She testified that "[a]s we were getting pulled over I witnessed the African-American with the tattoos on his face fumbling around in the back seat and it looked like he shoved something in the back seat and behind the driver's seat." Upon witnessing his movements, she told him, "whatever you're doing back there, don't put nothing in my car."

**{¶7}** Ware similarly testified that he observed Stubbs slump down, pull his hat down towards his face, and move around in the backseat. Forster also testified that he witnessed Stubbs reach as if he wanted to put on his seatbelt or take something out of his side when the emergency lights activated behind them, but he could not tell specifically what Stubbs was doing. Appellant denied ownership of the gun, but told police he knew the gun was in the purse.

**{¶8}** Stubbs was convicted by a jury of having a weapon under a disability, a felony of the third-degree. *See* R.C. 2923.13(A)(3). He was sentenced to 30 months imprisonment on August 20, 2013.

ASSIGNMENT OF ERROR NUMBER ONE

**{¶9}** Appellant's first assignment of error alleges:

{¶10} "THE JURY VERDICT OF GUILTY TO THE OFFENSE OF HAVING A WEAPON UNDER A DISABILITY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶11} A challenge based on manifest weight of the evidence looks to the greater amount of credible evidence that supports one side more than the other. *State v. McCrary*, 7th Dist. No. 12MA135, 2014-Ohio-1468, ¶ 73, citing *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). While reviewing the entire record, the reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins,* 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶12} Only a unanimous three-judge panel can reverse a jury verdict on manifest weight grounds. Ohio Constitution, Art. IV, Section 3(B)(3). The appellate court's discretionary power to grant a new trial should be exercised only in the exceptional case where the evidence weighs heavily against the conviction. *Thompkins,* 78 Ohio St.3d at 387. Instead, the court will defer to the fact-finder "who is best able to weigh the evidence and judge the credibility of witnesses by viewing the demeanor, voice inflections, eye movements, and gestures of the witnesses testifying before it." *McCrary*, 7th Dist. No. 12MA135 at ¶ 73, citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984); *State v. DeHass,* 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

{¶13} Thus, if there are two reasonable interpretations of the evidence, the court will not find that the jury clearly lost its way*. McCrary,* 7th Dist. No. 12MA135 at ¶ 74, citing *Thompkins*, 78 Ohio St.3d at 387. Consequently, appellate courts are especially deferential to a jury verdict and avoid inserting the court as "the thirteenth juror." *Id.* Finally, circumstantial evidence possesses the same probative value as direct evidence. *State v. Nicely,* 39 Ohio St.3d 147, 150, 529 N.E.2d 1236 (1988).

{¶14} Appellant argues that it was against the manifest weight of the evidence to find that he possessed the firearm. Since appellant does not dispute that he was under a disability, the issue presented is whether some reasonable person could find that he knowingly acquired, had, carried, or used the firearm. *See* R.C. 2923.13(A).

{¶15} Appellant states that neither Ware nor McGee had inspected the car prior to the search and had no way of knowing whether the firearm was in the car prior to appellant entering the vehicle. He notes the messy condition of the car. He points out that no witnesses observed a firearm on his person and that he denied ownership of the gun to police. He urges that his behavior in the vehicle was consistent with a person attempting to avoid detainment due to an active bench warrant and need not be attributable to an attempt to hide a firearm.

{¶16} The state counters that no part of the statute in question requires a defendant to physically possess the firearm at the time of arrest. Thus, it is of no consequence that the gun was not observed on appellant's person or found on his body. It is emphasized that appellant's behavior after seeing the emergency lights was noticeable to the other occupants and to Officer Ellis and seemed suspicious enough to prompt McGee to warn appellant: "whatever you're doing back there, don't put nothing in my car."

{¶17} Several districts have dealt with similar manifest weight of the evidence cases where a firearm was found in a vehicle containing multiple passengers, each of which could theoretically have possessed the firearm. See *State v. Whitaker,* 4th Dist. No. 07CA3168, 2008-Ohio-4149 (upholding conviction for having a weapon while under a disability was upheld where a gun was found in the area of the defendant after the officer observed him duck down and make furtive movements); *State v. Tisdel,* 8th Dist. No. 875, 2006-Ohio-6763 (affirming conviction for having a weapon while under disability conviction where a gun was found after the officer observed the defendant move around and appear to "shove something" under a seat after being pulled over); *State v. Turner,* 1st Dist. No. C-810453 (Sept. 8, 1982) (affirming conviction where an officer found a gun underneath a seat after observing the defendant in the backseat of the car bend down and then sit back). Compare

*State v. Harris,* 8th Dist. No. 88765, 2007-Ohio-3916 (overturning conviction where a gun was recovered in a multi-passenger car where the defendant *did not* exhibit suspicious behavior nor make any furtive movements.)

**{¶18}** Appellant makes much of the fact that the gun was never observed on his body nor was it found on his body.  However, this fact does not in and of itself render the verdict against the manifest weight of the evidence.  Whether individual members of this court believe that appellant was guilty is not the issue; rather, the issue is whether a reasonable juror could have found him guilty.  As to whether the witnesses were credible, the jury was in the best position to determine credibility, and we will not second-guess the jurors' determination.  Considering the testimony regarding appellant's actions and behavior, a reasonable juror could have found that he possessed the gun.

**{¶19}** Accordingly, we cannot say that the jury clearly lost its way and that the verdict resulted in a manifest miscarriage of justice.  This assignment of error is overruled.

<u>ASSIGNMENT OF ERROR NUMBER TWO</u>

**{¶20}** Appellant's second assignment of error alleges:

**{¶21}** "THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN SENTENCING THE DEFENDANT TO THIRTY (30) MONTHS IMPRISONMENT."

**{¶22}** A defendant contesting his sentence can argue that the sentencing court did not comply with all applicable rules and statutes in imposing the sentence and that the sentence is clearly and convincingly contrary to law.  *State v. Kalish*, 120 Ohio St.3d 23, 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 4.  A defendant can also contend that the sentence imposed by the trial court is an abuse-of-discretion.  *Id. See also State v. Scott,* 7th Dist. No 13MA47, 2014-Ohio-2993, ¶ 9-10 (maintaining the abuse of discretion standard).  "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶23} Appellant concedes that the trial court complied with all applicable sentencing statutes and that the sentence was not clearly and convincingly contrary to law. He instead argues that the trial court abused its discretion in sentencing appellant to a thirty-month term of imprisonment, suggesting that the seriousness and recidivism factors weigh in his favor.

{¶24} In sentencing a defendant, a court must weigh the seriousness and recidivism factors. Under R.C. 2929.12(B), factors making conduct "more serious" are: (1) physical or mental injury suffered by the victim was exacerbated because of the physical or mental condition or age of the victim; (2) the victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense; (3) the offender held a public office or position of trust in the community, and the offense related to that office or position; (4) the offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice; (5) the offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others; (6) the offender's relationship with the victim facilitated the offense; (7) the offender committed the offense for hire or as a part of an organized criminal activity; and, (8) the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.

{¶25} Under R.C. 2929.12(C), the factors making conduct "less serious" are: (1) the victim induced or facilitated the offense; (2) the offender acted under strong provocation; (3) the offender did not cause or expect to cause physical harm to any person or property; and, (4) substantial grounds exist to mitigate the offender's conduct, even if not enough to constitute a defense.

{¶26} Under R.C. 2929.12(D), the factors making recidivism "more likely" include: (1) that at the time of the offense, the offender was under release from confinement before trial or sentencing, under post-release control or any other provision of the Revised Code for an earlier offense or had been unfavorably terminated from post-release control for a prior offense; (2) the offender previously was adjudicated a delinquent child or the offender has a history of criminal

convictions; (3) the offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child or the offender has not responded favorably to sanctions previously imposed for criminal convictions; (4) the offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse; and, (5) the offender shows no genuine remorse for the offense.

**{¶27}** Under R.C. 2929.12(E), the factors making recidivism "less likely" include: (1) prior to the offense, the offender had not been adjudicated a delinquent child; (2) the offender had not been convicted of or pleaded guilty to a prior criminal offense; (3) the offender had led a law-abiding life for a significant number of years prior to committing the offense; (4) the offense was committed under circumstances not likely to recur; and, (5) the offender shows genuine remorse for the offense.

**{¶28}** Appellant was sentenced to 30 months from a sentencing range of 9 to 36 months. The prosecution recommended the maximum sentence of 36 months. In arguing that the trial court abused its discretion in sentencing him, appellant highlights the fact that his arrest lacked the presence of violence, damage to property, or an underlying criminal act. He emphasizes that he was only 22 years old and the evidence against him at trial was not overwhelming. He notes that the prior offenses mentioned at sentencing were misdemeanors – obstructing official business and assault. He claims that R.C. 2929.14(B) provides that the shortest prison sentence available must be given unless it demeans the seriousness of the offense or does not adequately protect the public.

**{¶29}** Contrary to appellant's assertion, R.C. 2929.14(B) no longer requires these findings to deviate from the minimum sentence. And as the state responds, the sentence was within the statutory range. Further, the state argues that the trial court properly considered and applied the seriousness and recidivism factors. The state reminds this court that appellant's problems with the law began while he was a juvenile and there has been a steady pattern of offenses from 2006 through 2013.

**{¶30}** Appellant's record began in 2006 with a juvenile felony adjudication for which he served 6 months in DYS. He was convicted again in 2008 for obstruction of official business, a misdemeanor. In 2009, he was convicted for possession of cocaine that resulted in the weapons disability that was the basis for the instant case. He was also convicted of attempted tampering with evidence. He was more recently charged with three offenses in 2012, including: carrying a concealed weapon, having a weapon while under a disability, and assault. At the time of the instant sentencing, he had not been sentenced for those crimes but he said he reached a plea bargain wherein he pled guilty to the concealed weapon charge in exchange for the prosecutor dropping the disability charge. Furthermore, it appears he has twice been sentenced to prison for probation violations.

**{¶31}** The judge found that the factors making recidivism "more likely" outweighed the factors making recidivism "less likely". Specifically, the judge noted that appellant's record began as a juvenile and includes adult felony crimes. The judge further stated that appellant had not responded favorably to probation in the past. The judge noted that appellant had previously been sentenced to prison on two occasions for separate probation violations. The judge also took note of appellant's lack of genuine remorse.

**{¶32}** Considering all of the pertinent factors, including appellant's criminal history and the fact that he had a bench warrant at the time of his arrest, we cannot rule that the trial court abused its discretion in sentencing appellant. This assignment of error is overruled. The judgment of the trial court is hereby affirmed.

Waite, J., concurs.
DeGenaro, P.J., concurs.