[Cite as *State v. Mobarak*, 2017-Ohio-7999.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 14AP-517<br>(C.P.C. No. 12CR-5582) |
| v. | : | |
| Soleiman Mobarak, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

---

D E C I S I O N

Rendered on September 29, 2017

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellee. **Argued:** *Seth L. Gilbert*.

**On brief:** *The Behal Law Group LLC*, *Robert J. Behal*, *John M. Gonzales*, and *Gilbert J. Gradisar*, for appellant. **Argued:** *Robert J. Behal*.

---

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} This case is before us based on a remand issued by the Supreme Court of Ohio in *State v. Mobarak*, 150 Ohio St.3d 26, 2016-Ohio-8372 ("*Mobarak II*"), in which the court reversed our decision in *State v. Mobarak*, 10th Dist. No. 14AP-517, 2015-Ohio-3007 ("*Mobarak I*"). In *Mobarak I*, we sustained the first assignment of error raised by Soleiman Mobarak, defendant-appellant, and found his remaining three assignments of error moot. In reversing and remanding the matter in *Mobarak II*, the Supreme Court directed us to consider on remand appellant's remaining assignments of error.

{¶ 2} The following factual summary is essentially identical to the one in *Mobarak I.* Appellant appeals the judgment of the Franklin County Court of Common

Pleas, in which the court found him guilty, pursuant to a jury verdict, of engaging in a pattern of corrupt activity, in violation of R.C. 2923.32, a first-degree felony (with a specific factual finding that one or more instances of corrupt activity involved a felony of the first degree; and, separately, that one or more instances of corrupt activity involved a felony of the second or third degree); aggravated trafficking in drugs, in violation of R.C. 2925.03, a second-degree felony (with a specific factual finding that a-Pyrrolidinopentiophenone ("A-PVP") was a controlled substance analog); aggravated possession of drugs, in violation of R.C. 2925.03, a fourth-degree felony (with a specific factual finding that A-PVP was a controlled substance analog); aggravated trafficking in drugs, in violation of R.C. 2925.03, a second-degree felony (with a specific factual finding that A-PVP was a controlled substance analog); aggravated possession of drugs, in violation of R.C. 2925.11, a second-degree felony (with a specific factual finding that A-PVP was a controlled substance analog); aggravated trafficking in drugs, in violation of R.C. 2925.03, a first-degree felony (with a specific factual finding that A-PVP was a controlled substance analog); and aggravated possession of drugs, in violation of R.C. 2925.11, a first-degree felony (with a specific factual finding that A-PVP was a controlled substance analog). The jury also made findings as to the bulk amount issues on the drug counts.

{¶ 3} Appellant owns a convenience store. From March to July 2012, undercover police officers purchased packages of a substance commonly referred to as "bath salts" from appellant's store. Appellant was arrested on July 25, 2012. In August and October 2012, appellant was charged with various drug trafficking and possession counts as well as engaging in a pattern of corrupt activity. The State of Ohio, plaintiff-appellee, alleged the bath salts were "controlled substance analogs," as defined by R.C. 3719.01(HH)(1).

{¶ 4} Appellant sought to have the charges dismissed. Appellant also filed a motion in limine to exclude the testimony of the state's expert witness, Dr. Travis Worst, a forensic scientist from the Bureau of Criminal Investigation ("BCI"), arguing that he did not meet the requirements of Evid.R. 702. The trial court held a hearing on the motion in limine but never explicitly ruled on the motion.

{¶ 5} A jury trial commenced May 27 and concluded June 5, 2014. The trial court found appellant guilty on numerous counts as outlined above. The trial court held a

sentencing hearing on June 6, 2014, and sentenced appellant to consecutive terms of incarceration totaling 35 years of mandatory confinement without parole. The trial court also fined appellant $75,000. The trial court issued a judgment entry that same day, and appellant appealed the matter to this court asserting the following assignments of error:

> I. It was plain error for the trial court to fail to dismiss all charges against Mr. Mobarak sua sponte, and allowing and his [sic] conviction and imprisonment for innocent acts is an ex post facto violation that is prohibited by the Ohio and United States Constitutions.
>
> II. The "controlled substance analog" statute under which Mr. Mobarak was convicted was unconstitutionally vague on its face and in its application, and his conviction was a fundamental error that violated his constitutional right to due process of law.
>
> III. Because the state's expert testimony on the substances at issue was insufficient under both the state and federal standards, the trial court erred and abused its discretion in denying Mr. Mobarak's motion in limine to exclude this subjective evidence.
>
> IV. The trial judge erred to Mr. Mobarak's prejudice because an order imposing consecutive sentences in this case is not supported by the facts.

{¶ 6} In *Mobarak I,* this court sustained appellant's first assignment of error. Based on this court's precedent, we found the statutory definition of "controlled substance" in R.C. 2925.01 did not include or expressly incorporate the definition of controlled substance analog created in H.B. No. 64, and, thus, possession of controlled substance analogs had not yet been criminalized by that bill or at the time of appellant's offenses. Therefore, we found the trial court erred when it found appellant guilty of aggravated possession of drugs, aggravated trafficking in drugs, and engaging in a pattern of corrupt activity. Given this determination, we found appellant's second, third, and fourth assignments of error moot.

{¶ 7} The state appealed our decision to the Supreme Court. In *Mobarak II*, the Supreme Court reversed our decision on the authority of *State v. Shalash*, 148 Ohio St.3d 611, 2016-Ohio-8358 ("*Shalash II*"). In *Shalash II*, the court certified a conflict with *Mobarak I* and addressed "whether 'controlled substance analogs' were criminalized as of

October 17, 2011, the effective date of House Bill 64." *Id.* at ¶ 4. The court answered the question in the affirmative. The court found that H.B. No. 64 enacted R.C. 3719.013 which provides that, with some explicit exceptions, "a controlled substance analog, to the extent intended for human consumption, shall be treated for purposes of any provision of the Revised Code as a controlled substance in schedule I." *Id.* at ¶ 11. The court found R.C. 3719.013 dispositive. The court reasoned that, although controlled substance analogs were not specifically proscribed by Title 29 when the defendant was arrested and indicted for selling them, R.C. 3719.013 incorporated controlled substance analogs into Title 29. The court reversed our decision in *Mobarak I* and remanded the matter to this court to address appellant's second, third, and fourth assignments of error, which we will now do.

{¶ 8} In his second assignment of error, appellant argues that the controlled substance analog statute under which he was convicted was unconstitutionally vague on its face and in its application, and his conviction was a fundamental error that violated his constitutional right to due process of law. For a substance to be a "controlled substance analog," the chemical structure of the substance must be "substantially similar to the structure of a controlled substance in schedule I or II." R.C. 3719.01(HH)(1)(a). Former R.C. 3719.013 provided that a controlled substance analog "shall be treated for purposes of any provision of the Revised Code as a controlled substance in schedule I."

{¶ 9} The interpretation of a statute is a question of law that we must review de novo. *Washington Cty. Home v. Ohio Dept. of Health*, 178 Ohio App.3d 78, 2008-Ohio-4342, ¶ 27 (4th Dist.). All enacted legislation enjoys a strong presumption of constitutionality. *Sorrell v. Thevenir*, 69 Ohio St.3d 415, 418-19 (1994). To overcome this presumption, "it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142 (1955), paragraph one of the syllabus. The challenger bears the burden of establishing beyond a reasonable doubt that the statute is unconstitutional. *State v. Tooley*, 114 Ohio St.3d 366, 2007-Ohio-3698, ¶ 29.

{¶ 10} A statute or ordinance may be ruled unconstitutional on grounds of vagueness. *State v. Bennett*, 150 Ohio App.3d 450, 2002-Ohio-6651 (1st Dist.). The vagueness doctrine is premised on the due process clause of the Fourteenth Amendment and "bars enforcement of ' "a statute which either forbids or requires the doing of an act in

terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." ' " *Id.* at ¶ 17, quoting *United States v. Lanier*, 520 U.S. 259, 266 (1997), quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926). "When [a] resolution is challenged as unconstitutionally vague, the reviewing court must determine whether the statute provides sufficient notice of its proscriptions and contains reasonably clear guidelines to prevent official arbitrariness or discrimination in its enforcement." *State v. Brundage*, 7th Dist. No. 01 CA 07 (Mar. 20, 2002).

{¶ 11} A legislative enactment may be unconstitutional on its face, or as applied in a specific circumstance. A facial challenge requires that "the challenging party * * * show that the statute is vague 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.' " *State v. Anderson*, 57 Ohio St.3d 168, 171 (1991), quoting *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971). If the statute is being challenged only as applied to the circumstances of the case, the challenger " 'contends that application of the statute in the particular context in which he has acted, or in which he proposes to act, [is] unconstitutional.' " *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, ¶ 17, quoting *Ada v. Guam Soc. of Obstetricians & Gynecologists*, 506 U.S. 1011 (1992) (Scalia J., dissenting).

{¶ 12} As pertinent to the remand in the present case, appellant contends that even if his acts had been clearly defined as criminal, the complex nature of the chemical substances would make uniform enforcement of them under the vague "substantially similar" requirement in former R.C. 3719.01 impossible, resulting in arbitrary enforcement. Appellant also asserts that "substantially similar" is not defined in the statute, and the criterion each scientist used for arriving at a conclusion as to substantial similarity was up to each scientist.

{¶ 13} The Twelfth District Court of Appeals in *State v. Shalash*, 12th Dist. No. CA2013-06-052, 2014-Ohio-2584 ("*Shalash I*"), addressed these issues, and we concur with its conclusions. In that case, the defendant argued the definition of "controlled substance analog" in R.C. 3719.01(HH) was unconstitutional since it was void for vagueness. The court first noted that the definition of "controlled substance analog" in R.C. 3719.01(HH) is very similar to the definition of "controlled substance analogue" in

the Controlled Substance Analogue Enforcement Act of 1986, 21 U.S.C. 802(32), and although no appellate court in this state has addressed whether R.C. 3719.01(HH) is unconstitutionally vague, every federal circuit court that has addressed this issue has held that the Controlled Substance Analogue Enforcement Act's analogue provision is not unconstitutionally vague. The court agreed with those courts that the term "controlled substance analogue" is clearly and specifically defined, in terms readily comprehensible to the ordinary reader; provides adequate notice of what conduct is prohibited; and makes plain drugs that have been chemically designed to be similar to controlled substances, but are not themselves listed on the controlled substance schedules, will nonetheless be considered as schedule I substances if they: (1) are substantially similar chemically to drugs that are on those schedules, (2) produce similar effects on the central nervous system as drugs that are on those schedules, or (3) are intended or represented to produce effects similar to those produced by drugs that are on those schedules. The court indicated there was nothing vague about the statute. Thus, the court rejected the defendant's argument that R.C. 3719.01(HH)'s definition of "controlled substance analog" was void for vagueness.

{¶ 14} In the present case, appellant also argues that if it is possible that two scientists using the same method of analysis and using an identical definition for "substantially similar" could come to different conclusions, the general public has little hope of determining whether two chemicals are substantially similar.

{¶ 15} The court in *Shalash I* addressed similar arguments that: (1) the chemical structure of a substance is not commonly known to a reasonably educated person, (2) it is unreasonable to believe that an ordinary person would be aware that the substance possessed is contrary to the substances allowed by the statute if the substance has to be tested by an expert to determine its chemical makeup, and (3) a reasonably educated person would not know if a substance has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than that of a controlled substance in schedule I or II. However, the court in *Shalash I* rejected these arguments on the basis that the same arguments have already been rejected by federal courts interpreting the federal statute. The court found persuasive the reasoning from federal case law that the legislature can expect a person who wishes to engage in the

activity to acquire the necessary specialized knowledge to conform their conduct to the law.

{¶ 16} The same conclusions on similar issues were reached in *State v. Jackson*, 9th Dist. No. 27132, 2015-Ohio-5246, and we concur with that court's analysis, as well. In that case, the defendants argued that the controlled substance analog statute, R.C. 3719.013, was unconstitutionally vague on its face and as applied to each of them. The court did not agree that the statute was unconstitutionally vague as applied. In its analysis, the court found that the constitutionality of the controlled analog statute largely depended on the constitutionality of the definition of "controlled substance analog," as contained in R.C. 3719.01(HH). The court found that Ohio's statutory scheme with regard to controlled substance analogs is virtually identical to the federal Control Substance Analogue Enforcement Act. The court relied on the numerous federal circuit courts that had considered void for vagueness challenges to the federal act and found it to be constitutional. The court acknowledged that, while the phrase "substantially similar" does not lend itself to a uniform definition, due process does not require absolute certainty in every case in which a person seeks to experiment in reaching the outermost boundaries of lawful conduct. *Id.* at ¶ 33. The court reasoned that, so long as a reasonable person would have sufficient notice of a statute's prescriptions, it is not unconstitutionally vague. *Id.* Furthermore, the court found that, although certain chemists might disagree as to the meaning of "substantially similar," a lack of consensus among experts does not render the controlled substance analog statute unconstitutionally vague. *Id.* at ¶ 36. The court found it sufficient that the scientists in that case were able to rely on the common meaning of the phrase "substantially similar," in conjunction with their knowledge and training, to conclude that the drugs were substantially similar. The court ruled the defendant had not shown that the state's case was the result of arbitrary or discriminatory enforcement. Having found the statute constitutional as applied, the court concluded it need not consider whether it is unconstitutionally vague in all its applications. The Supreme Court affirmed *Jackson* in *State v. Jackson*, 150 Ohio St.3d 27, 2016-Ohio-8363, on the authority of *Shalash II.*

{¶ 17} For the foregoing reasons, and in concurrence with the above cases and their rationales, we find the "controlled substance analog" statute under which appellant

was convicted was not unconstitutionally vague on its face or in its application, and his conviction did not violate his constitutional right to due process of law. Therefore, we overrule appellant's second assignment of error.

{¶ 18} Appellant argues in his third assignment of error that, because the state's expert testimony on the substances at issue was insufficient under both the state and federal standards, the trial court erred and abused its discretion in denying appellant's motion in limine to exclude this subjective evidence. Because a trial court's decision on a motion in limine is a ruling to admit or exclude evidence, the standard of review on appeal is whether the trial court committed an abuse of discretion that amounted to prejudicial error. *Gordon v. Ohio State Univ.*, 10th Dist. No. 10AP-1058, 2011-Ohio-5057, ¶ 82. A review under the abuse of discretion standard is a deferential review. It is not sufficient for an appellate court to determine that a trial court "abused its discretion simply because the appellate court might not have reached the same conclusion or is, itself, less persuaded by the trial court's reasoning process than by the countervailing arguments." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14.

{¶ 19} In the present case, appellant contends the trial court should have granted his motion in limine to prohibit the testimony from the state's expert witness, Dr. Worst, because it failed to meet the requirements of Evid.R. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Evid.R. 702 provides:

> (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
>
> (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
>
> (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
>
> (1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

(2) The design of the procedure, test, or experiment reliably implements the theory;

(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

{¶ 20} To determine whether a proposed expert's testimony about a scientific technique or a scientific methodology is scientifically reliable, the court focuses on factors identified by the United States Supreme Court in *Daubert*, as adopted by the Supreme Court in *Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607, 611-12 (1998). These factors include: (1) whether a theory or technique can be (and has been) tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) the known or potential rate of error, and (4) general acceptance in the scientific community. *Daubert* at 593-94. In assessing reliability, the focus must generally be on principles and methodology, not on the conclusions that they generate. *Id.* at 595.

{¶ 21} R.C. 3719.01(HH) contains two requirements for a chemical to be classified as a controlled substance analog: (1) the chemical structure of the substance is substantially similar to the structure of the controlled substance in schedule I or II, and (2) the chemical has an effect that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II. In the present case, appellant contends the state's method of analysis for both requirements of the statute failed to meet the standard.

{¶ 22} Appellant's argument is twofold: (1) the state's structural analysis of the chemical at issue is entirely subjective and not reliable or rigorous enough to be admissible, specifically because "substantially similar" has no specific definition and the expert used a two-dimensional model, and (2) the state's testimony on the "pharmacological effect" prong of the state's analysis is insufficient and should have been excluded, specifically because Dr. Worst was the sole pharmacologist at BCI and his opinions were without certainty.

{¶ 23} In response, the state claims that appellant waived his arguments because he failed to renew his motion in limine during trial. A motion in limine is a request " 'that the court limit or exclude use of evidence which the movant believes to be improper, and is made in advance of the actual presentation of the evidence to the trier of fact, usually

prior to trial.' " *Gordon* at ¶ 82, quoting *State v. Winston*, 71 Ohio App.3d 154, 158 (2d Dist.1991). " '[A] motion in limine is a preliminary ruling which must be renewed at trial or the argument made therein is waived for purposes of appeal.' " *Gold v. Burnham*, 10th Dist. No. 14AP-603, 2015-Ohio-1431, ¶ 13, quoting *State v. Smith*, 7th Dist. No. 11 MA 120, 2013-Ohio-756, ¶ 128. " 'An appellate court need not review the propriety of [a decision on a motion in limine] unless the claimed error is preserved by an objection, proffer, or ruling on the record when the issue is actually reached and the context is developed at trial.' " (Emphasis omitted.) *State v. Grubb*, 28 Ohio St.3d 199, 203 (1986), quoting Palmer, Ohio Rules of Evidence Rules Manual at 446 (1984). The failure to draw the court's attention to possible error, by objection or otherwise, when the error could have been corrected, results in a waiver of the issue for purposes of appeal, absent plain error. *Gold* at ¶ 13, citing *In re Ebenschweiger*, 12th Dist. No. CA2003-04-080, 2003-Ohio-5990, ¶ 9-10. In a civil case, the plain error doctrine is limited to extremely rare cases involving exceptional circumstances "where the error, left unobjected to at the trial court, rises to the level of challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122 (1997).

{¶ 24} In the present case, appellant filed a motion in limine to exclude Dr. Worst's testimony at trial because it failed to comply with R.C. 3719.01(HH) and *Daubert*. The court held a hearing on appellant's motion in limine and ordered the parties to file post-hearing memoranda. However, the trial court never ruled on the motion in limine either before, during, or after the final trial on the merits. Importantly, appellant never renewed his motion in limine or the objections contained therein during trial and, specifically, during the testimony of Dr. Worst. At trial, Dr. Worst opined in full regarding the requirements of R.C. 3719.01(HH). Beyond the defense's overt failure to raise any objection to Dr. Worst's being declared an expert in both chemistry and pharmacology, a review of the trial transcript reveals that Dr. Worst testified at great length, without objection, as to whether the chemical structure of A-PVP was substantially similar to the structure of a controlled substance in schedule I or II, and whether the chemical had an effect that was substantially similar to or greater than the effect of a controlled substance in schedule I or II. Therefore, it is clear from the record that appellant failed to renew the grounds for his motion in limine at trial and, therefore, he has waived all but plain error.

{¶ 25} We find no plain error here. Appellant's first argument is that Dr. Worst's methodology was unreliable because he compared the chemical structures of A-PVP and methylenedioxypyrovalerone ("MDPV"), a schedule I substance, using two-dimensional models instead of three-dimensional models to determine substantial similarity. However, although Dr. Worst admitted that three-dimensional models might be of possible assistance, he also testified that three-dimensional models are not necessary, two-dimensional drawings are sufficient, and other experts use two-dimensional models. Even appellant's expert at the *Daubert* hearing, Dr. Alfred Staubus, testified that a three-dimensional structure may or may not be useful in this particular case. Furthermore, appellant's citation to a Cuyahoga County Common Pleas Court case, *State v. Silmi*, Cuyahoga C.P. No. CR 561754 (Feb. 7, 2013), in which the court excluded lab tests finding a substantial similarity when it found there was no general acceptance for the two-dimensional methodology, does not win the day for appellant here. A contrary common pleas decision from another district does not demonstrate plain error was committed in the present case, and no other court has relied on *Silmi*. Although the court in *Shalash I* did cite to *Silmi* and expressed doubt about the use of two-dimensional comparisons, the court in *Shalash I* indicated that it did not necessarily agree with *Silmi* and expressly found that its decision to remand the matter to the trial court was based on the court's failure to hold a *Daubert* hearing. Therefore, this argument is without merit.

{¶ 26} Appellant's second argument is that Dr. Worst failed to directly compare the effect of A-PVP and the effect of MDPV on the central nervous system, instead relying on research that compared the effects of A-PVP to pyrovalerone and then compared pyrovalerone to MDPV. Appellant's third argument is that Dr. Worst did not rely on live testing to determine whether the effect of A-PVP on the central nervous system was substantially similar to or greater than that of MDPV. Appellant contends that Dr. Worst could only offer a mere prediction as to the pharmacological effects of ingesting A-PVP given these limitations.

{¶ 27} However, Dr. Worst did testify that he was 85 percent certain about his predictions. Although appellant argues these predictions did not present sufficient reliable scientific evidence under the *Daubert* factors because Dr. Worst could point to no history of testing, peer review, error rate, or general acceptance in the scientific

community, what appellant is actually contesting is the witness credibility determination. In essence, Dr. Worst believed his methods of testing the pharmacological effects of A-PVP were reliable despite these limitations, while Dr. Staubus testified that Dr. Worst's methods were not. Apparently, the jury chose to believe Dr. Worst.

{¶ 28} We are mindful that the *Daubert* factors are not to be rigidly applied because the inquiry is a flexible one. *Daubert* at 594; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). "[E]ven if [an expert's] opinion has neither gained general acceptance by the scientific community nor has been the subject of peer review, these are not prerequisites to admissibility under *Daubert*." *Miller* at 613. The "ultimate touchstone" for determining reliability is helpfulness to the trier of fact, which turns on whether the expert's technique or principle is sufficiently reliable so that it will aid the trier of fact in reaching accurate results. *Id.* at 614. "The rejection of expert testimony is the exception rather than the rule, [and] *Daubert* did not work a seachange over federal evidence law, and the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Rudd v. GMC*, 127 F.Supp.2d 1330, 1337 (D.C. Ala.2001). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert* at 596.

{¶ 29} In the present case, the jury had the benefit of hearing the cross-examination of Dr. Worst and the contrary opinions given by Dr. Staubus. The jury chose to believe Dr. Worst. For all the foregoing reasons, we find the trial court did not err when it, in effect, denied appellant's motion in limine to exclude the expert testimony of Dr. Worst from evidence. Therefore, appellant's third assignment of error is overruled.

{¶ 30} Appellant argues in his fourth assignment of error that the trial court erred when it imposed consecutive sentences because they were not supported by the facts. We first note that appellant's initial contention is that R.C. 2929.14(B) required the court to impose the shortest prison term because he had not previously served a prison term and the trial court failed to find that either the shortest prison term would demean the seriousness of the offender's conduct or would not adequately protect the public from further crime by the offender or others. However, this argument relies on a previous version of R.C. 2929.14(B). This portion of R.C. 2929.14(B) was found to be

unconstitutional in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, because it required judicial fact-finding before the imposition of a more than minimum sentence. Consequently, the Supreme Court severed it from the statute. *Id.* at ¶ 97. The legislature formally removed this portion of the statute pursuant to amended H.B. No. 86, effective September 30, 2011. 2011 Am.Sub.H.B. No. 86; thus, R.C. 2929.14(B) no longer requires these findings. *State v. Thomas*, 9th Dist. No. 14CA0042-M, 2015-Ohio-2195, ¶ 10; *State v. Stubbs*, 7th Dist. No. 13 JE 31, 2014-Ohio-3791, ¶ 28-29. Therefore, this argument is without merit.

{¶ 31} With regard to consecutive sentences, R.C. 2929.14(C)(4) provides:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 32} Thus, pursuant to R.C. 2929.14(C)(4), in order to impose consecutive terms of imprisonment, the trial court is required to make at least three distinct findings: "(1) that consecutive sentences are necessary to protect the public from future crime or to punish the offender; (2) that consecutive sentences are not disproportionate to the

seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) that one of the subsections (a), (b) or (c) applies." (Emphasis omitted.) *State v. Price*, 10th Dist. No. 13AP-1088, 2014-Ohio-4696, ¶ 31, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177. A trial court seeking to impose consecutive sentences must make the findings required by R.C. 2929.14(C)(4) at the sentencing hearing and also incorporate such findings into its sentencing entry. *Bonnell* at ¶ 37. However, the trial court need not state reasons to support its findings, and is not "required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Id. See also State v. Ayers*, 10th Dist. No. 13AP-371, 2014-Ohio-276, ¶ 12. A "word-for-word recitation of the language of the statute is not required," but where "the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Bonnell* at ¶ 29.

{¶ 33} Here, appellant failed to object to the imposition of consecutive sentences at the sentencing hearing; thus, our review is limited to consideration of whether the trial court committed plain error.  *Ayers* at ¶ 7. Under Crim.R. 52(B), " '[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.' 'To constitute plain error, the error must be obvious on the record, palpable, and fundamental such that it should have been apparent to the trial court without objection.' " *State v. Jones*, 10th Dist. No. 14AP-80, 2014-Ohio-3740, ¶ 11, quoting *State v. Gullick*, 10th Dist. No. 13AP-26, 2013-Ohio-3342, ¶ 3, citing *State v. Tichon*, 102 Ohio App.3d 758, 767 (9th Dist.1995).

{¶ 34} In the present case, appellant asserts that, although the trial court read the necessary findings virtually verbatim from the statutory text, those findings were without sufficient evidence in the record. Specifically, appellant presents the following two arguments: (1) the prosecutor raised an allegation during the sentencing hearing that the prosecutor's boss informed him that an unidentified jailhouse informant indicated that appellant was looking into having the prosecutor or his wife killed, and this information was hearsay within hearsay, and should not have been considered, and (2) at the sentencing hearing, the state played a recorded phone call between appellant and an

unidentified person, during which appellant threatened to have a Palestinian individual (whom defense counsel claimed was appellant's mother-in-law) harmed and mentioned a $200,000 payment. Appellant claims that this information too was hearsay, but the court still considered it. Appellant asserts this evidence was not sufficient to demonstrate the consecutive sentences were necessary to protect the public.

{¶ 35} We disagree with appellant. During the sentencing hearing, the court found that information about killing a court officer was of special significance, threatening to have someone killed during the phone call was particularly horrific, and evidence of appellant's phone call was credible. The court also found appellant was a drug supplier keeping local addicts supplied with cheap highs, all under the guise of running a neighborhood market. The findings were all relevant to show that consecutive sentences were necessary to protect the public, and the trial court could consider them. *See* R.C. 2929.19(A) (prosecuting attorney may present information relevant to the imposition of sentence); R.C. 2929.19(B)(1) (in imposing sentence, the court must consider any information presented at the hearing by any person pursuant to R.C. 2929.19(A)). Furthermore, this court has held that the court may admit hearsay evidence at a sentencing hearing. *See State v. Randlett*, 10th Dist. No. 06AP-1073, 2007-Ohio-3546, ¶ 25, citing *State v. Bene*, 12th Dist. No. CA2005-09-090, 2006-Ohio-3628, ¶ 21. This court found in *Randlett* that Evid.R. 101(C) clearly identifies sentencing hearings as among those certain criminal proceedings in which the Rules of Evidence, including the hearsay rule, do not apply; thus, a trial court is free to rely on reliable hearsay in its sentencing decision. *Id.*, citing *Bene* at ¶ 21. Therefore, we find the trial court did not err in this respect.

{¶ 36} Appellant next argues that the trial court's pro forma finding—that consecutive sentences amounting to 35 years in prison were not disproportionate to the seriousness of the conduct—was not supported by sufficient evidence. We disagree. The trial court found credible the statement of a trial witness who indicated that appellant told him he had made a million dollars selling A-PVP. The court also found that appellant was considerably worse than a casual drug dealer. The court also noted that appellant attempted to conceal his illegal activities, as there was evidence presented that appellant kept the A-PVP hidden so police would not find all of it. Although appellant frames the

million dollar claim as a casual boast, the trial court found it credible and indicated it removed appellant from the classification of a casual drug dealer. In addition, although appellant argues he possessed and controlled substances that were not illegal to possess and sell, the Supreme Court has concluded otherwise. Therefore, we find the trial court did not err in considering this evidence. For all the foregoing reasons, the trial court did not err when it sentenced appellant to consecutive sentences. Appellant's fourth assignment of error is overruled.

{¶ 37} Accordingly, appellant's three remaining assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

KLATT, J., concurs.
HORTON, J., concurs in judgment only.

HORTON, J., concurring in judgment only.

{¶ 38} I respectfully concur in judgment only as I disagree with the majority in paragraph 33 that the appellant's failure to object to consecutive sentences at the sentencing hearing limits the reviewing court to a plain error analysis. The appeal serves as the objection in this context.

———————————————